UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BASF CORPORATION,

                    Plaintiff,

         -against-                                    1:19-CV-0134 (LEK/DJS)

ALBANY MOLECULAR
RESEARCH, INC., *et al.*,

                    Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiff BASF Corporation has filed an action pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq.*

("CERCLA"), seeking cost recovery, contribution, and declaratory relief for costs and damages

associated with discovering and treating contaminated Hudson River sediments located near

Rensselaer, New York. Dkt. No. 1 ("Complaint").[1] Plaintiff has sued several companies that

currently own or formerly owned real property that included a sewer line which contributed to

the contamination at issue, including Albany Molecular Research, Inc. ("AMRI"), AMRI

Rensselaer, Inc. ("AMRI-Rensselaer"), E. I. DuPont De Nemours and Company ("DuPont"), The

Chemours Company ("Chemours"), GE Healthcare, Inc. ("GE Healthcare"), General Electric

Company ("GE"), Sanofi US Services ("Sanofi"), STWB Inc. ("STWB"), and the United States

of America (the "Government") (collectively, "Defendants").

---

[1]  Plaintiff also seeks declaratory judgments pursuant to 28 U.S.C. § 2201. Compl. ¶ 100.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have each filed motions to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted.[2] Plaintiff opposes each of the Motions[3] to which Defendants have separately filed replies.[4] STWB has also filed a limited opposition to Sanofi's Motion[5] to which Sanofi has filed a reply.[6]

For the following reasons, the Government's Motion is granted and the remaining Motions are granted in part and denied in part.

## II.     BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). "For purposes of a motion to dismiss," the Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000). Furthermore, the Court may rely upon public records, such as "letter decisions of government agencies, published reports, [or] records

---

[2]  Dkt. Nos. 21 ("AMRI & AMRI-Rensselaer Motion"); 34 ("GE Healthcare & GE Motion"); 43 ("STWB Motion"); 44 ("Government Motion"); 45 ("Sanofi Motion"); 46 ("Chemours & DuPont Motion") (collectively, "Motions").

[3]  Dkt. Nos. 49 ("Response to AMRI & AMRI-Rensselaer"); 54 ("Response to STWB"); 56 ("Response to GE Healthcare & GE"); 57 ("Response to Sanofi"); 58 ("Response to Government"); 59 ("Response to Chemours & DuPont").

[4]  Dkt. Nos. 53 ("AMRI & AMRI-Rensselaer Reply"); 60 ("Government Reply"); 61 ("GE Healthcare & GE Reply"); 63 ("Sanofi Reply"); 64 ("STWB Reply"); 65 ("Chemours & DuPont Reply").

[5]  Dkt. No. 55 ("STWB Opposition to Sanofi Motion").

[6]  Sanofi Reply.

of administrative agencies . . ." when deciding a motion filed under Rule 12(b)(6). Moore U.S.A., Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (citing, inter alia, Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993)).

Plaintiff's claims arise from its ownership of certain real property located in Rensselaer, New York along the Hudson River, i.e., the "General Aniline Site." Compl. ¶ 15. "Adjacent to the General Aniline Site to the north" lies another parcel of real property that Plaintiff does not own, i.e., the "Sterling Site." Id. ¶ 17.

### A.  Ownership of Both Sites

Between 1908 and 1918, the General Aniline Site and Sterling Site were owned as a combined property by several companies and the Government. Compl. ¶¶ 25–30. In 1919, Sterling Products Company subdivided the property into the Sterling Site and the General Aniline Site. Id. ¶ 31. Sterling Products Company retained the Sterling Site for itself and sold the General Aniline Site to Grasselli Chemical Company ("Grasselli Chemical") that same year. Id.

### B.  The Sewer Line

In 1908, a joint sewer line was installed on what came to be the General Aniline Site and the Sterling Site. See Compl. ¶ 18. Between 1908 and 1976, "[t]he sewer line discharged untreated process wastewater, cooling water, and sanitary wastewater from both the Sterling Site and the General Aniline Site into the Hudson River." Id. ¶ 19; see also id. ¶ 46. In 1976, both Sites ceased utilizing the sewer line to discharge wastewater into the Hudson River using an on-site wastewater treatment facility constructed on the General Aniline Site instead. Id. ¶ 21.

### C.  Ownership of the Sterling Site

"Sterling Products Company and/or affiliated entities, including Sterling Winthrop Inc. (collectively 'Sterling'), continuously owned and operated the Sterling Site from 1918" to 1988.[7] Compl. ¶ 32. In 1988, Eastman Kodak Company ("Kodak") purchased the Sterling Site. Id. ¶ 33. In 1994, Kodak "spun-off certain assets of the Sterling business, including Sterling Site and the diagnostic imaging business that operated there" to Sanofi. Id. ¶ 36. In addition to the actual Sterling Site, Kodak also "sold all of the shares of Sterling to [SmithKline Beecham plc ("SmithKline")]" that same year. Id. ¶ 34. Sterling then became a wholly-owned subsidiary of Miles Inc. pursuant to a stock purchase agreement between SmithKline and Miles Inc., dated September 11, 1994. Id. "Following the purchase of Sterling, Miles, Inc. changed its name to Bayer Corp. In 1996, Sterling changed its name to STWB." Id.

In 1994, Nycomed purchased the Sterling Site and the diagnostic business operating there from Sanofi, and, in 1997, Nycomed merged with Amersham to form Nycomed Amersham plc. Id. ¶ 37. In 1999, AMRI together with the then-management of Nycomed Amersham plc jointly purchased the Sterling Site and the diagnostic business operating on it. Id. ¶ 39.[8] They renamed the company operating the Site, "Organichem," that same year. Id. Around 2003, AMRI became the sole owner of Organichem and renamed the company, "AMRI-Rensselaer." Id. ¶ 40. AMRI-Rensselaer "is the current owner and operator of the Sterling Site." Id. ¶ 41.

---

[7] While the Complaint states, "1994," the Court construes the Complaint to have meant 1988.

[8] Two years after divesting itself of the Sterling Site, Nycomed Amersham plc was renamed Amersham plc. Id. ¶ 37. Then, in 2004, "GE Healthcare and/or GE acquired Amersham plc. . . . . Amersham plc was then merged into GE Healthcare." Id. ¶ 38.

**D. Ownership of the General Aniline Site**

Ownership of the General Aniline Site changed hands multiple times between 1919—when Grasselli Chemical acquired it—and 1942 when "the United States Department of the Treasury seized General Aniline and Film Corp., including the operations on the General Aniline Site, pursuant to the Trading With the Enemy Act, 50 U.S.C. Appl. §§ 1-44." Compl. ¶¶ 43–51. One owner of the General Aniline Site prior to the United States was DuPont, which purchased a fifty-percent stake in a joint venture, Grasselli Dyestuff Corporation, that owned the General Aniline Site between 1924 and 1929. Id. ¶¶ 44–46.[9] In 1965, the United States sold General Aniline and Film Corp., which was renamed GAF Corporation ("GAF") in 1968. Id. ¶¶ 52–53. In 1978, Plaintiff purchased the General Aniline Site from GAF. Id. ¶ 54. "At the time of [Plaintiff's] purchase of the General Aniline Site in 1978, the on-site wastewater treatment facility had been operating for approximately two years and discharges of untreated wastewater to the Hudson River had ceased." Id. ¶ 55. But for GAF's subsequent bankruptcy, an indemnification provision in the Agreement of Sale between Plaintiff and GAF would have completely indemnified Plaintiff "from all environmental response costs relating to the historic operations of the joint sewer [line] . . . ." Id. ¶¶ 55–56. Plaintiff ceased operations at the General Aniline Site in 2000. Id. ¶ 54.

---

[9] Plaintiff does not clarify how Chemours came to be an owner of the General Aniline Site. Rather, Plaintiff simply alleges Chemours "is a successor to Grasselli Dyestuff Corporation." Id. ¶ 82. The Court surmises Chemours may be liable as a company spun-off from DuPont.

### E.  Investigation of Hudson River Sediments

Under the oversight of the New York State Department of Environmental Conservation ("NYSDEC"), Plaintiff began conducting an investigation into and remediation of hazardous substances located at the General Aniline Site. Compl. ¶ 57. In 2003, NYSDEC issued a Record of Decision ("ROD") that selected a remedy for removing hazardous substances from the General Aniline Site, a site which the 2003 ROD refers to "Operable Unit 1" ("OU–1"). GE Healthcare & GE Mot, Ex. A.[10] The 2003 ROD differentiated between OU–1 and "Operable Unit 2" ("OU–2"), which includes Hudson River sediments and other off-site areas that may have been impacted by contamination migrating from the General Aniline Site. Id. at 8. Plaintiff remediated OU–1 in accordance with an Administrative Order of Consent ("AOC") issued by the NYSDEC in 2003. GE Healthcare & GE Mot, Ex. B.[11]

In 2016, NYSDEC issued another ROD "for OU2 that requires a remediation involving the removal of approximately 38,700 cubic yards of contaminated sediment from the Hudson River, the installation of a cover system, and, for the southern portions of the investigation area, a monitored natural recovery program." Compl. ¶ 64. Prior to the 2016 ROD, Plaintiff discovered discharges from the sewer line connecting the General Aniline Site and Sterling Site had contaminated Hudson River sediments within OU–2. Id. ¶ 64. Plaintiff entered into another AOC with the NYSDEC in 2017, which required Plaintiff to remediate the Hudson River sediments in

---

[10] Since this is a public record, the Court may consider this document on a motion to dismiss. See Moore U.S.A., Inc., 139 F. Supp. 2d at 363 (citing, inter alia, Pension Ben. Guar. Corp., 998 F.2d at 1197).

[11] Likewise, since this is a public record, the Court may consider this document on a motion to dismiss. See Moore U.S.A., Inc., 139 F. Supp. 2d at 363 (citing, inter alia, Pension Ben. Guar. Corp., 998 F.2d at 1197).

OU–2. Id. ¶ 65. The investigation and remediation of the contamination within OU–2 is estimated to cost around $46.9 million, of which Plaintiff has already paid $12.2 million. Id. ¶¶ 66–67. Plaintiff "has also incurred costs for natural resource damages ('NRD') claims related to OU–2." Id. ¶ 68.

### F. Plaintiff's Claims

Plaintiff alleges three causes of action against Defendants: (1) cost recovery pursuant to § 107(a); (2) contribution pursuant to §§ 113(f)(1) and (f)(3)(B); and (3) declaratory relief pursuant to § 113(g)(2).[12] Compl. ¶¶ 86–102. Plaintiff's claims concern the investigation and remediation of the contamination with OU–2, not OU–1. See id.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Put another way, a claim is plausible if it is supported by "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all inferences in

---

[12]  Sections 107(a), 113(f), and 113(g) of CERCLA are "codified together at 42 U.S.C. §§ 9601–9675." See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 210 (3d Cir. 2010). For simplicity, the Court refers sections of CERCLA itself, not the United States Code.

the light most favorable to the non-moving party[] . . . ." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted).

## I.    DISCUSSION

At the outset, "[t]he Court recognizes full-well wading through CERCLA's morass of statutory provisions can often seem as daunting as cleaning up one of the sites the statute is designed to cover." Cadlerock Properties Joint Venture, L.P. v. Schilberg, No. 01-CV-896, 2005 WL 1683494, at *5 (D. Conn. July 19, 2005).

As noted by another court in this circuit:

> CERCLA is a remedial statute "designed to encourage prompt and effective cleanup of hazardous waste sites" by "assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010). Under CERCLA, states and the federal government may "initiate comprehensive cleanups and . . . seek recovery of expenses associated with those cleanups" from "property owners [who] are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." Id. To relieve the burden on property owners, CERCLA permits them to "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters—the so-called potentially responsible parties ('PRPs')." Id. (citing 42 U.S.C. § [107(a)]).
>
> CERCLA provides two mechanisms through which PRPs may recover costs they expended to decontaminate a polluted site: Section 107(a) for cost recovery claims and Section 113(f) for contribution claims.

101 Frost St. Assocs., L.P. v. United States Dep't of Energy, No. 17-CV-3585, 2019 WL 4415387, at *4 (E.D.N.Y. Sept. 16, 2019).

"[U]nder § 107, the United States, a state, or 'any other person' that has incurred costs in remediating a contaminated site may bring a cost recovery action against a PRP." HLP Props.,

LLC v. Consol. Edison Co. of New York, No. 14-CV-1383, 2014 WL 6604741, at *3 (S.D.N.Y. Nov. 21, 2014) (quoting § 107(a)(4)(B)). Section 107(a) "permits a party . . . to recover necessary response costs incurred voluntarily, [but] not under a court or administrative order or judgment." Consol. Edison Co. of New York v. UGI Utilities, Inc., 423 F.3d 90, 100 (2d Cir. 2005).

"Section 113(f)(3)(B), on the other hand, 'provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement.' Finally, § 113(f)(1) provides a right of contribution to PRPs that have been sued under [CERCLA] §§ 106 or 107." Cooper Crouse-Hinds, LLC v. City of Syracuse, New York, No. 16-CV-1201, 2018 WL 840056, at *5 (N.D.N.Y. Feb. 12, 2018) (internal citations omitted).

Even though a claimant may bring a separate cost recovery action under § 107(a), the claimant must still establish a prima facie case under § 107(a) to bring a contribution claim. Another court in this circuit has observed:

> To establish a prima facie case under § 107(a) of CERCLA, a plaintiff must show that (1) the defendants fall within one or more of the four classes of responsible persons described in CERCLA § 107(a); (2) the site is a "facility" as defined in CERCLA; (3) a release or threatened release of a hazardous substance has occurred, (4) the release or threatened release has caused the plaintiff to incur response costs; and (5) the costs and response actions conform to the national contingency plan set up by CERCLA.

SRSNE Site Grp. v. Advance Coatings Co., No. 12-CV-443, 2015 WL 13639165, at *3 (D. Conn. Mar. 27, 2015) (quoting New York v. Adamowicz, 16 F. Supp. 3d 123, 139-40 (E.D.N.Y. 2014)).

### A. Plaintiff's Section 107(a) Claims

Defendants each argue that Plaintiff cannot simultaneously maintain claims under § 107(a) and § 113(f) (i.e., its first two causes of action).[13] Although, as Plaintiff suggests, "the waters in this area [of the law] remain somewhat murky," Seneca Meadows, Inc. v. ECI Liquidating, Inc., 427 F. Supp. 2d 279, 285 (W.D.N.Y. 2006); see also Resp. to AMRI & AMRI-Rensselaer at 8–9, the Court agrees with Defendants.

"[I]n Niagara Mohawk, the plaintiff sought to recover (under Section 107(a) or, alternatively, Section 113(f)(3)(B)) costs it incurred pursuant to a consent order it entered into with [NYS]DEC. The Second Circuit held that the plaintiff could only pursue a contribution claim pursuant to Section 113(f)(3)(B) since the plaintiff had resolved its liability pursuant to an administrative settlement and, therefore, could not also pursue a Section 107(a) claim." 101 Frost St. Assocs., L.P., 2019 WL 4415387, at *5 (internal citations omitted) (citing Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112 (2d Cir. 2010)). "[C]onsent orders between private parties and the NYSDEC," such as those at issue in this case, "may qualify as an administrative or judicially approved settlement under § 113(f)(3)(B). A party is entitled to seek contribution under § 113(f)(3)(B), however, only when liability for CERCLA claims, rather than some broader category of legal claims is resolved." New York v. Town of Clarkstown, 95 F. Supp. 3d 660, 675 (S.D.N.Y. 2015) (citations, internal quotation marks, and alteration omitted). Thus, the question is whether Plaintiff has "met a statutory trigger for filing a contribution action" under Section 113(f)(3)(B) by entering into an administrative settlement. See HLP

---

[13] AMRI & AMRI-Rensselaer Mot. at 6–10; GE Healthcare & GE Mot. at 22–24; STWB Mot. at 3–6; Gov't Mot. at 4–6; Sanofi Mot. at 9–10; Chemours & DuPont Mot. at 7–9.

Props., LLC, 2014 WL 6604741, at *5 (internal quotation marks omitted) (quoting Hobart Corp.

v. Waste Mgmt. of Ohio, Inc., 758 F.3d 757, 767–68 (6th Cir. 2014)). The Court finds Plaintiff

has done so.

Plaintiff entered into the 2017 AOC with the NYSDEC under which Plaintiff was

required to clean up contamination within OU–2. The AOC states in section "VII. Release and

Covenant Not to Sue" that "[u]pon the Department's issuance of a Certificate of Completion [of

the remediation] as provided at 6 NYCRR §§ 375-1.9 and 375-2.9, Respondent shall obtain the

benefits conferred by such provisions, subject to the terms and conditions described therein." GE

Healthcare & GE Mot, Ex. F at 15.[14] Section 375-2.9(a) in turn reads, "Upon receipt of the

certificate of completion . . . the parties named on such certificate shall not be liable to the

department upon any statutory or common law cause of action, except for one for natural

resource damages, arising out of the presence of any contaminants in, on or emanating from the

site that was the subject of such certificate." N.Y. Comp. Codes R. & Regs. tit. 6, § 375-2.9(a).

The 2017 AOC additionally states that it "resolves [Plaintiff's] liability to the State as provided

at 6 NYCRR § 375-1.5(b)(5)." GE Healthcare & GE Mot, Ex. F at 2. Section 375-1.5(b)(5) in

turn says:

> (i) To the extent authorized under 42 USC section 9601, et seq.; GOL
> section 15-108, and any other applicable law, the remedial party shall
> be deemed to have entered into an administrative settlement of
> liability and to have resolved its liability to the State for purposes of
> contribution protection provided by 42 USC section 9613(f)(2) for
> "matters addressed" pursuant to and in accordance with such order,
> agreement or State assistance contract.

---

[14] Since this is a public record, the Court may consider this document on a motion to
dismiss. See Moore U.S.A., Inc., 139 F. Supp. 2d at 363 (citing, inter alia, Pension Ben. Guar.
Corp., 998 F.2d at 1197).

(ii) "Matters addressed" in the order, agreement or State assistance contract shall mean all response actions taken by the remedial party to implement the order, agreement or State assistance contract for the site and all response costs incurred and to be incurred by any person or party in connection with the work performed under such order, agreement or State assistance contract, which costs have been paid by the remedial party, including reimbursement of State costs pursuant to the order, agreement or State assistance contract.

(iii) Furthermore, to the extent authorized under 42 USC section 9613(f)(3)(B), by entering into such administrative settlement of liability, if any, for some or all of the response action and/or for some or all of the costs of such action, the remedial party is entitled to seek contribution from any person except those who are entitled to contribution protection under 42 USC section 9613(f)(2) or, if applicable, ECL 27-1421.

§ 375-1.5(b)(i)–(iii).

The 2017 AOC includes language releasing Plaintiff from liability that is notably similar to language in a consent order the Second Circuit found to "qualif[y] as an administrative settlement of liability for purposes of CERCLA pursuant to the plain text of § 113(f)(3)(B)." <u>See</u> <u>Niagara Mohawk Power Corp.</u>, 596 F.3d at 126. In that case the Second Circuit observed:

[T]he 2003 Consent Order specifically released NiMo from CERCLA liability. . . . Under the 2003 Consent Order, the remedial activities performed by NiMo were consideration for "a release and covenant not to sue . . . which [NYSDEC] has or may have pursuant to . . . State or Federal statutory or common law involving or relating to investigative or remedial activities relative to or arising from the disposal of hazardous wastes or hazardous substances." Once NiMo completed the Consent Order responsibilities, NiMo was "deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2)" and thus was "entitled to seek contribution."

<u>Id.</u> at 125–26. Consequently, the 2017 AOC is an administrative settlement for the purposes of § 113(f)(3)(B). Because Plaintiff "can assert a contribution claim under Section 113(f) with

respect to the costs incurred at [OU-2], all costs pertaining to th[at] area[] must be pursued under Section 113(f) . . . ." See <u>101 Frost St. Assocs., L.P.</u>, 2019 WL 4415387, at *8.

As previously noted by this Court:

> Federal Rule of Civil Procedure 8 permits a plaintiff to state as many separate claims or defenses as it has, regardless of consistency. A party may not, however, recover separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other. CERCLA § 107(a) and § 113(f) are plainly mutually exclusive: if a plaintiff satisfies the prerequisites for bringing a claim under § 113(f), she cannot then proceed to recover the same CERCLA costs under § 107(a). The same is true in reverse. Nonetheless, mutually exclusive theories of recovery may proceed beyond the pleading stage if one is alleged in the alternative of the other. A plaintiff need not use particular words to plead in the alternative, but only as long as it can be reasonably inferred that this is what she is doing.

<u>MPM Silicones, LLC v. Union Carbide Corp.</u>, 931 F. Supp. 2d 387, 396 n.11 (N.D.N.Y. 2013) (internal citations, quotation marks, and alterations omitted). Because "[t]here is nothing on the face of the Complaint . . . that would permit the Court to infer that" Plaintiff has pled its § 107(a) and § 113(f) claims in the alternative, the Court dismisses Plaintiff's § 107(a) claims against all Defendants. See <u>id.</u>[15]

---

[15] The Court need not reach each Defendant's alternative arguments for dismissal of Plaintiff's § 107(a) claims, namely that:

(1) Those claims are time barred, AMRI & AMRI-Rensselaer Mot. at 10–12; GE Healthcare & GE Mot. at 15–21; STWB Mot. at 7; Sanofi Mot. at 11–17; Chemours & DuPont Mot. at 4–6;

(2) AMRI and AMRI-Rensselaer have an affirmative defense under § 107(b), AMRI & AMRI-Rensselaer Mot. at 21–24;

(3) AMRI and AMRI-Rensselaer are not current owners of the property at issue and are not "arrangers" for the purposes of § 107(a)(4), <u>id.</u> at 16–20; and

(4) Defendants are not liable as successive owners of the property at issue, <u>id.</u> at 14–16; GE Mot. at 12–15; Sanofi Mot. at 17–20.

## B. Plaintiff's Section 113(f) Claims

### 1. Plaintiff's Section 113(f)(1) Claims

Sanofi alone argues Plaintiff may not maintain its § 113(f)(1) claim against Sanofi because "this provision bars parties from pursuing contribution thereunder if they have not been the subject of either of the two civil actions enumerated therein." Sanofi Mot. at 11. Under § 113(f)(1), "a private party [can] seek contribution from other liable parties only after having been sued under [CERCLA §§ 106 or 107(a)]." Robert H. Law, Inc. v. Woodbine Bus. Park, Inc., No. 13-CV-1393, 2019 WL 1130121, at *27 (N.D.N.Y. Mar. 12, 2019) (internal quotation marks omitted) (quoting United States v. Atlantic Research Corp., 551 U.S. 128, 133 (2007) (citing Niagara Mohawk Power Corp., 596 F.3d at 121–22)). Plaintiff "concedes that its Complaint does not allege that there was a civil action brought in this matter under CERCLA §§ 106 or 107(a)," but argues it need not be sued to pursue its claims under § 113(f)(1). Resp. to Sanofi at 10. In support of its argument, Plaintiff points to the saving clause of § 113(f)(1), which reads: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under" § 106 or § 107. § 113(f)(1). Yet the Supreme Court has held that "[t]he saving clause, however, does not . . . expand § 113(f)(1) to authorize contribution actions not brought 'during or following' a § 106 or § 107(a) civil action." Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 158 (2004). Thus, Plaintiff misunderstands the requirements for bringing a claim under § 113(f)(1).

"The Court has the authority under Rule 12(b)(6) to dismiss a complaint sua sponte for failure to state a claim upon which relief may be granted if the complaint lacks an arguable basis either in law or fact. Notice and an opportunity for the nonmovant to be heard are the only

prerequisites to the Court's exercise of its inherent powers in this fashion." MPM Silicones, 931

F. Supp. 2d at 396 (N.D.N.Y. 2013) (internal citations and quotation marks omitted). While the

other Defendants have not moved to dismiss Plaintiff's § 113(f)(1) claims, the Court finds

Plaintiff had sufficient notice and opportunity to be heard to warrant dismissal of them.

Accordingly, the Court dismisses Plaintiff's § 113(f)(1) claims against all Defendants.

### 2. Plaintiff's Section 113(f)(3)(B) Claims

#### a. Statue of Limitations

Several Defendants argue that Plaintiff's § 113(f)(3)(B) claims are time barred.[16] The

Court disagrees.

"The statute of limitations for Section 113(f) claims is three years from the date of a

judgment or judicially approved settlement." 101 Frost St. Assocs., L.P., 2019 WL 4415387, at

*4 (citing § 113(g)(3)); see also HLP Props., 2014 WL 6604741, at *7 (noting that, for a claim

under § 113, "the 'triggering event' for the statute of limitations period was the date that the

[plaintiffs] 'resolved their CERCLA liability'"). Consent orders, such as the ones relevant to this

case, may trigger the limitations period. See New York v. Solvent Chem. Co., 664 F.3d 22, 26

(2d Cir. 2011); Chitayat v. Vanderbilt Assocs., 702 F. Supp. 2d 69, 83 (E.D.N.Y. 2010)

("Accordingly, the Court concludes that Chitayat's § 113(f)(3)(B) claim is governed by a three

year statute of limitations, which period began to run, at the latest, on the date of the Consent

Order.")

---

[16] GE Healthcare & GE Mot. at 15–21; STWB Mot. at 8; Sanofi Mot. at 11–17; Chemours & DuPont Mot. at 4–7.

The parties quibble over which consent order triggers the limitations period for Plaintiff's § 113(f)(3)(B) claims. Defendants argue the limitations period began to run after Plaintiff entered into the 2003 AOC with the NYSDEC,[17] while Plaintiff argues the period began to commence after it entered into the 2017 AOC.[18] The Court agrees with Plaintiffs.

In support of their arguments, Defendants rely on New York State Elec. and Gas Corp. v. FirstEnergy Corp. ("NYSEG") for the proposition that there can only be one limitations period per site.[19] In that case, like here, a contaminated site was divided into two operable units. 766 F.3d 212, 235 (2d Cir. 2014). Between 1994 and 1995, the plaintiff "remediated the portion of the site known as 'Operational Unit 1' ('OU–1')" pursuant to an ROD issued by NYSDEC in 1994. Id. In 1996, the plaintiff "discovered more coal tar contamination in the Susquehanna River on what became 'Operational Unit 2' ('OU–2')." Id. After the plaintiff "identified a pipe leading to the riverbed as the source of contamination" in 1998, the NYSDEC "ordered NYSEG to remove the pipe as well as the contaminated river sediments." Id. The plaintiff "completed remediating the river and pipe" in 2003. Id. Pursuant to § 107(a), the plaintiff sought "to recover for the cost of groundwater monitoring and pipe and sediment removal performed at OU–2 in 2003," but the Second Circuit found remediation at OU–2 to be "a continuation of the remedial

---

[17] GE Healthcare & GE Mot. at 18–19; STWB Mot. at 8; Sanofi Mot. at 14–15; Chemours & DuPont Mot. at 7.

[18] Resp. to GE Healthcare & GE at 18; Resp. to STWB at 14–15; Resp. to Sanofi at 15; Resp. to Chemours & DuPont at 14.

[19] GE Healthcare & GE Mot. at 18–20; STWB Mot. at 8; Sanofi Mot. at 12–15; Chemours & DuPont Mot. at 7.

work begun in 1994 on OU–1, and thus time-barred by" § 113(g)(2)(B)'s six-year limitations period for § 107(a) remedial actions. Id.

Applying the logic of NYSEG to Plaintiff's § 113(f)(3)(B) claims, Defendants would have the Court conclude that OU–1 and OU–2 are part of one site and the limitations period for the site began to run with the 2003 AOC and expired thirteen years before Plaintiff filed this suit in 2019.[20] The Court, however, rejects the application of NYSEG to Plaintiff's § 113(f)(3)(B) claims. As noted above, NYSEG addressed claims brought solely under § 107(a), which is governed by a limitations period in which the triggering event is whether the plaintiff is recovering costs based on "*remedial*" work or "*removal*" work.[21] § 113(g)(2) (emphasis added). NYSEG upheld the lower-court's holding that "there can only be one remedial action at any given site," and therefore ruled the limitations began to run on the plaintiff's claims once it began remediating the site at issue. NYSEG, 766 F.3d at 235–36. In this case, Plaintiff's § 113(f)(3)(B) claims are governed by a limitations period in which the triggering event is whether a plaintiff has received a *judgment* or entered a *judicially approved settlement*. § 113(g)(3) (emphasis added). Since Plaintiff's § 113(f)(3)(B) claims are not predicated on remedial or removal actions taken at OU–1 and OU–2, NYSEG's ruling is inapposite here. In sum, the Court declines to extend NYSEG to a case with a different type of claim brought under a different limitations period.

---

[20]  The statute of limitations for claims brought under § 113(f) is three years. § 113(g)(3).

[21]  "Remedial actions are 'generally long-term or permanent containment or disposal programs,' while removal efforts are 'typically short-term cleanup arrangements.'" HLP Props., LLC, 2014 WL 6604741, at *3 (quoting Schaefer v. Town of Victor, 457 F.3d 188, 195–96 (2d Cir. 2006)).

Plaintiff seeks contribution under the 2017 AOC for costs associated with investigating and remediating the contamination of OU–2. Hence, claims brought under the 2017 AOC are "governed by a different statute of limitations" than claims brought under the 2003 AOC, "and the fact that recovery with respect to the former is time-barred does not legally preclude [Plaintiff] from pursuing recovery with respect to the latter, which is not." See Bernstein v. Bankert, 733 F.3d 190, 215 (7th Cir. 2013); ASARCO LLC v. Goodwin, 756 F.3d 191, 202 (2d Cir. 2014) (applying a limitations period to each settlement agreement when determining whether the plaintiff's § 113(f)(3)(B) claims are time barred). Because Plaintiff filed its Complaint within two years of the 2017 AOC, its § 113(f)(3)(B) claims are not barred by the statute of limitations.

### b. Successor Liability

As noted above, Plaintiff must first establish a prima facie case under § 107(a) to bring its § 113(f)(3)(B) claims. Several Defendants assert Plaintiff has failed to satisfy the second element of a prima facie case, which requires that Defendants fit into at least one of the four categories of responsible persons outlined in § 107(a). SRSNE Site Grp., 2015 WL 13639165, at *3 (quoting Adamowicz, 16 F. Supp. 3d at 139–40). More specifically, these Defendants argue Plaintiff has not plausibly alleged that they are successors-in-interest to the owners of the Sterling Site or the General Aniline Site when hazardous substances were pumped through the joint sewer line into the Hudson River.[22]

For each Defendant except STWB and the Government, Plaintiff alleges the company was a successor to an owner and operator of "the Sterling Site and/or General Aniline Site . . . at

---

[22]  AMRI & AMRI-Rensselaer Mot. at 14–16; GE Healthcare & GE Mot. at 12–15; Sanofi Mot. at 17–20.

the time the hazardous substances were disposed of, resulting in a release of hazardous substances into OU2" and/or a successor to a party that "arranged for . . . disposal, treatment, or transport for disposal or treatment of hazardous substances, resulting in a release of hazardous substances into OU2." Compl. ¶¶ 74–79, 82–83, 87. Accordingly, Plaintiff bases its claims for successor liability on two of the four categories of "responsible persons described in CERCLA § 107(a)," SRSNE Site Grp., 2015 WL 13639165, at *3 (quoting Adamowicz, 16 F. Supp. at 139–40), which are: "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" and "any person who by contract or agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances . . . ." § 107(a)(2)–(3).

      Another court in this circuit has observed that:

> Although CERCLA does not specifically provide that a successor corporation may be held liable for response costs, the Second Circuit has "held that CERCLA encompasses successor liability," which is governed by federal common law. New York v. Nat. Serv. Indus., Inc., 460 F.3d 201, 206 (2d Cir. 2006) (citing Nat'l Serv. Indus. Inc., 352 F.3d at 683). Under both New York and traditional common law, "a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities." Id. at 209. This general rule, however, is subject to the exceptions that "a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." Id. (internal quotation marks omitted).

Town of Clarkstown, 95 F. Supp. 3d at 682; see also Goodwin, 756 F.3d at 199 ("[W]e have held that CERCLA encompasses such successor liability.")

Although Plaintiff fails to explicitly aver which of the four exceptions for successor liability apply here, the Court construes Plaintiff's Complaint to allege certain Defendants "expressly or impliedly assumed the[ir] predecessor's tort liability." See Town of Clarkstown, 95 F. Supp. 3d at 682. The following Defendants challenge Plaintiff's allegations that they are successors-in-interest to the to the owners of the Sterling Site or the General Aniline Site when hazardous substances were pumped through the joint sewer line into the Hudson River: AMRI, AMRI-Rensselaer, GE Healthcare, GE, and Sanofi. The Court considers Plaintiff's pleadings regarding successor liability for these five Defendants, and finds Plaintiff has adequately pled successor liability for each relevant Defendant.

Plaintiff alleges AMRI, AMRI-Rensselaer, GE Healthcare, GE, and Sanofi "are successor[s] to Sterling and/or the Sterling operations at the Sterling Site." Compl. ¶¶ 74–78. Plaintiff further alleges upon information and belief that these companies "each have contractual indemnity obligations pertaining to environmental liabilities at, released and discharged from the Sterling Site. Pursuant to those obligations, AMRI, AMRI-Rensselaer, GE, GE Healthcare and Sanofi are liable for the costs of response resulting from the release of hazardous substances from the Sterling Site, including the costs of removing and/or capping hazardous substances it disposed of that have contaminated and continued to contaminate OU2." Id. ¶ 79. Each

Defendant argues Plaintiff's allegations are insufficient to plausibly state a claim for successor liability.[23]

To demonstrate that Defendants are successors-in-interest, Plaintiff requires access to the agreements governing the transfer of those sites from one party to another. These agreements are "peculiarly within" each Defendant's "possession and control," a fact which "does not prevent a plaintiff from 'pleading facts alleged upon information and belief." See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010); see also Stimson Lumber Co. v. Int'l Paper Co., No. 10-CV-79, 2010 WL 5128650, at *4 (D. Mont. Oct. 18, 2010) (concluding the plaintiff in a CERCLA action sufficiently pled facts upon "information and belief" regarding whether the defendant's predecessor-in-interest had released chemicals onto a site since evidence of facts was "peculiarly within" the defendant's "possession and control" (quoting Arista Records LLC, 604 F.3d at 120)), report and recommendation adopted by No. 10-CV-79, 2010 WL 5186752 (D. Mont. Dec. 10, 2010). Consequently, Plaintiff's allegations made upon information and belief that AMRI, AMRI-Rensselaer, GE Healthcare, GE, and Sanofi are subject to indemnity agreements that render them successors-in-interest are sufficient to allow Plaintiff's claims to proceed.[24]

---

[23] AMRI & AMRI-Rensselaer Mot. at 14–16; GE Healthcare & GE Mot. at 12–15; Sanofi Mot. at 17–20.

[24] Several parties have submitted exhibits in support of their arguments regarding successor liability that may or may not be documents the Court can consider without first converting them to a "motion to dismiss into a motion for summary judgment." Facci-Brahler v. Montgomery Cty., No. 18-CV-941, 2020 WL 360873, at *2 (N.D.N.Y. Jan. 22, 2020) (Kahn, J.) (internal quotation marks omitted) (quoting Rath v. Pitcher, No. 12-CV-6543L, 2014 WL 1315413, at *1 (W.D.N.Y. Mar. 28, 2014)); see also Fed. R. Civ. P. 12(d). The Court, however, need not consider these proffers of evidence extrinsic to the Complaint since the Court finds Plaintiff's allegations sufficient to support its claims regarding successor liability. Hence, the

<u>c.</u>  AMRI-Rensselaer's Direct Liability

Plaintiff avers AMRI-Rensselaer is not only liable as a successor-in-interest, but also as a

current owner of the Sterling Site. Compl. ¶¶ 78, 87; <u>see also</u> <u>SRSNE Site Grp.</u>, 2015 WL

13639165, at *3 (quoting <u>Adamowicz</u>, 16 F. Supp. 3d at 139-40); § 107(a). AMRI-Rensselaer

argues that these allegations are insufficient because Plaintiff has not alleged there is an ongoing

release of hazardous substances at the Sterling Site for which AMRI-Rensselaer is responsible.

AMRI & AMRI-Rensselaer Mot. at 16–20. The Court finds Plaintiff has adequately pled AMRI-

Rensselaer is liable as a current owner of the Sterling Site.

AMRI-Rensselaer appears to take issue with Plaintiff's interpretation of § 107(a), which

imposes liability upon a current "owner and operator of a vessel or a facility . . . from which there

*is* a release . . . ." § 107(a) (emphasis added). More specifically, AMRI-Rensselaer argues

Plaintiff mistakenly interprets "is" in § 107(a) to include releases of hazardous substances that

may have occurred in the past, not just ongoing releases. AMRI & AMRI-Rensselaer Mot. at 17;

<u>cf.</u> Phil Kuntz, The Evidence: The Starr Report, 373 (2010) (Quoting President Clinton: "It

depends on what the meaning of the word 'is' is. If the—if he—if 'is' means is and never has

been, that is not—that is one thing. If it means there is none, that was a completely true

statement."). If AMRI-Rensselaer is correct that "is" in § 107(a) only includes ongoing releases,

then the company cannot be liable as a current owner of the Sterling Site because the release of

hazardous materials at issue ceased twenty-seven years before AMRI-Rensselaer took control of

the Site. <u>See</u> Compl. ¶¶ 40–42.

---

Court will "exclude the additional material and decide the motion on the complaint alone." <u>See</u>
<u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000). For this reason, the Court disregards
the STWB Opposition to Sanofi Motion.

The Court finds AMRI-Rensselaer, not Plaintiff, has an erroneous interpretation of

§ 107(a). Another court in this district has observed:

> [A]s the Second Circuit has made clear, "current owners are liable if, inter alia, there *has been* a 'release' of hazardous substances.' [ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351, 358 (2d Cir. 1997)] (citing 42 U.S.C. § [107(a)]) . . . . In other words, an owner who did not contribute to the contamination of his property may nonetheless be liable for the release of hazardous substances. See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010) (noting that, under CERCLA, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there").

Murtaugh v. New York, 810 F. Supp. 2d 446, 478 (N.D.N.Y. 2011) (emphasis added). Therefore,

AMRI-Rensselaer may still be liable to Plaintiff as a current owner of the Sterling Site.

Town of New Windsor v. Tesa Tuck, Inc., 935 F. Supp. 305 (S.D.N.Y. 1996), upon

which AMRI-Rensselaer relies, does not warrant a different result. In Tesa Tuck, the court found

on summary judgment the defendant was not liable under § 107(a)(2) as a "person who at the

time of disposal of any hazardous substance owned or operated any facility at which such

hazardous substances were disposed of" because there was "no evidence that hazardous

substances were disposed of on" the defendant's property. Id. at 308 (quoting § 107(a)(2)). As

Plaintiff rightly notes, "Tesa Tuck is a case in which discovery was conducted, and no evidence

of a Release on the defendant's property was found." Resp. to AMRI & AMRI-Rensselaer at 17.

Unlike Tesa Tuck, no "discovery has taken place in this case to" suggest "hazardous substances

were" never actually "placed into the joint sewer line at he Sterling Site and [] carried to the

Hudson River resulting in currently-existing contamination that BASF is being required to

remediate." Id. (citing Compl. ¶¶ 59–63).

Consequently, Plaintiff has plausibly pled AMRI-Rensselaer is directly liable to Plaintiff as a current owner of the Sterling Site.

Plaintiff's claims pursuant to § 112(f)(3)(B) may proceed against all Defendants.

## C.  Plaintiff's Claims for Declaratory Judgments

Defendants argue the Court should dismiss Plaintiff's claims for declaratory judgments since Plaintiff does not have any viable claims under §§ 107(a) and 112(f).[25] As discussed above, Plaintiff's claims under § 112(f)(3)(B) may proceed. This said, CERCLA explicitly contemplates declaratory judgments only for "[a]n initial action for recovery of the costs referred to in [CERCLA § 107], i.e., not section 113(f)." Town of Clarkstown, 95 F. Supp. 3d at 675 (alterations in original) (quoting Solvent Chem. Co., 664 F.3d at 25); see also § 113(g)(2) ("In any [§ 107(a)] action, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.")

Thus, while § 113(g)(2) is silent as to whether it also covers declaratory judgments sought in conjunction with § 113(f), "nothing in the statute precludes an interpretation that declaratory relief is available in both instances." United States v. Davis, 261 F.3d 1, 46 (1st Cir. 2001); see also HLP Props., LLC, 2014 WL 6604741, at *9 (denying the defendant's motion to dismiss the plaintiff's claims for declaratory relief asserted in conjunction with the plaintiff's claims under § 113). As the Ninth Circuit has observed:

> CERCLA was intended to encourage quick response and to place the costs on those responsible. Declaratory relief serves these purposes

---

[25]  AMRI & AMRI-Rensselaer Mot. at 20–21; GE Healthcare & GE Mot. at 25; STWB Mot. at 8; Sanofi Mot. at 17; Chemours & DuPont Mot. at 9.

> because parties, like those in this case, will know their share of costs
> before they are incurred . . . . The costs and time involved in
> relitigating issues as complex as these where new costs are incurred
> would be massive and wasteful. Declaratory relief allocating future
> costs is therefore consistent with the broader purposes of CERCLA.

Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 (9th Cir. 2000) (internal citation omitted) (construing § 113(g)(2) to permit declaratory judgment actions predicated on contribution claims); see also GenCorp, Inc. v. Olin Corp., 390 F.3d 433, 450 (6th Cir. 2004) ("We agree with Olin insofar as it claims that requests for declaratory judgments concerning future response costs in § 107 and § 113(f) suits must be treated alike. The sections governing contribution work in conjunction with the liability provisions of § 107(a), as parties seeking contribution must turn to § 107 to establish the basis and elements of liability of the defendants." (citation and quotation marks omitted)); Davis, 261 F.3d at 46–47 ("[A]llocation helps to alleviate the hardship that would be visited upon the [PRP] seeking contribution if that PRP was, in effect, required to finance the entire cleanup operation before getting a determination regarding the shares attributable to the other PRP's." (alteration in original, citation omitted)). Hence, the Court concludes § 113(g)(2) applies to contribution actions, a conclusion underscored by the fact that "CERCLA was hastily enacted." Niagara Mohawk Power Corp., 596 F.3d 112 at 130 n.23. Consequently, the ambiguity on whether § 113(g)(2) applies to contribution actions may be a product of rushed legislative drafting. See Asarco LLC v. Cemex, Inc., 21 F. Supp. 3d 784, 800 (W.D. Tex. 2014) ("Unfortunately, courts also agree that CERCLA, a hastily enacted legislative compromise, is poorly drafted, ambiguous, and difficult to interpret." (citing Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 667 (5th Cir. 1989)).

In sum, because Plaintiff has viable contribution claims against Defendants, its requests for declaratory relief made in conjunction with its § 113(f)(3)(B) claims may proceed as well.[26] Since the Court has dismissed Plaintiff's cost recovery claims, the Court dismisses Plaintiff's requests for declaratory relief made in connection with its § 107(a) claims.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that AMRI and AMRI-Rensselaer's Motion (Dkt No. 21), GE Healthcare and GE's Motion (Dkt. No. 34), STWB's Motion (Dkt. No. 43), Sanofi's Motion (Dkt. No. 45), and Chemours and DuPont's Motion (Dkt. No. 46) are **GRANTED in part**. The Government's Motion (Dkt. No. 44) is **GRANTED in full**. Plaintiffs' (1) § 107(a) claims; (2) § 113(f)(1) claims; and (3) requests for declaratory relief made in conjunction with its § 107(a) claims are **dismissed without prejudice**; and it is further

**ORDERED**, that Plaintiff may replead its claims dismissed without prejudice within **sixty days** of the date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that AMRI and AMRI-Rensselaer's Motion, GE Healthcare and GE's Motion, STWB's Motion, Sanofi's Motion, and Chemours and DuPont's Motion are otherwise **DENIED**. Plaintiff's § 113(f)(3)(B) claims and requests for declaratory relief made in connection with its § 113(f)(3)(B) claims may proceed; and it is further

---

[26]  Even if the Court were to find § 113(g)(2) does not apply to contribution claims, the Court would still allow Plaintiff's requests for declaratory relief to proceed because, as in Solvent Chem. Co., which involved a contribution action against neighboring property owners, "the factors considered by a district court under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) are sufficient to require a declaratory judgment in this case." See 664 F.3d at 25–27.

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      February 12, 2020
                  Albany, New York

                                  Lawrence E. Kahn
                                  U.S. District Judge