UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BASF CORPORATION,

                              Plaintiff,

        -against-                                          1:19-CV-0134 (LEK/DJS)

ALBANY MOLECULAR RESEARCH,
INC., *et al.*,

                      Defendants.
_____

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff BASF Corporation has filed an action pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), seeking (1) cost

recovery under § 107(a); (2) contribution under §§ 113(f)(1) and (f)(3)(B); and (3) declaratory

relief under § 113(g)(2) and 28 U.S.C. § 2201 for costs and damages associated with discovering

and treating contaminated Hudson River sediments located near Rensselaer, New York. Dkt. No.

1 ("Complaint").[1] Plaintiff has sued several companies that currently own or formerly owned real

property that included a sewer line contributing to the contamination at issue, including Albany

Molecular Research, Inc. ("AMRI"), AMRI Rensselaer, Inc. ("AMRI-Rensselaer"), E. I. DuPont

De Nemours and Company ("DuPont"), The Chemours Company ("Chemours"), GE Healthcare,

Inc. ("GE Healthcare"), General Electric Company ("GE"), Sanofi US Services ("Sanofi"),

STWB Inc. ("STWB"), and the United States of America (the "Government").

_____

        [1]  Sections 107(a), 113(f), and 113(g) of CERCLA are "codified together at 42 U.S.C.
§§ 9601–9675." See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602 F.3d 204, 210 (3d Cir.
2010). Throughout this opinion, the Court refers to the sections of CERCLA itself, not the
United States Code.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants moved to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted.[2] On February 12, 2020, the Court dismissed without prejudice the following claims against each of the Defendants: (1) § 107(a) claims; (2) § 113(f)(1) claims, and (3) requests for declaratory relief made in conjunction with Plaintiff's §§ 107(a) and 113(f)(1) claims. Dkt. No. 66 ("February 2020 Memorandum-Decision and Order") at 26.[3] The Court found that Plaintiff's § 113(f)(3)(B) claims against each of the Defendants were not time-barred and therefore allowed those claims and requests for declaratory relief made in connection with the § 113(f)(3)(B) claims to proceed. Id. at 15–18; 26.

GE Healthcare, GE, Chemours, DuPont, Sanofi, STWB, AMRI, and AMRI-Rensselaer have moved for reconsideration of the Court's decision to allow Plaintiff's § 113(f)(3)(B) claims to proceed.[4] Plaintiff has filed a response to each of the motions.[5] Sanofi and STWB have also filed a notice of supplemental authority, Dkt. No. 80 ("Sanofi & STWB Notice of Supplemental

---

[2]  Dkt. Nos. 21 ("AMRI & AMRI-Rensselaer Motion to Dismiss"); 34 ("GE Healthcare & GE Motion to Dismiss"); 43 ("STWB Motion to Dismiss"); 44 ("Government Motion to Dismiss"); 45 ("Sanofi Motion to Dismiss"); 46 ("Chemours & DuPont Motion to Dismiss").

[3]  Although not explicitly stated in the February 2020 Memorandum-Decision and Order, the Court clarifies that it dismissed Plaintiff's requests for declaratory relief associated with Plaintiff's § 113(f)(1) claims because the Court also dismissed those underlying claims. See Feb. 2020 Mem.-Decision and Order at 14–15.

[4]  Dkt. Nos. 69 ("GE Healthcare, GE, Chemours, & DuPont Motion for Reconsideration"); 70 ("Sanofi & STWB Motion for Reconsideration"); 71 ("AMRI & AMRI-Rensselaer Motion for Reconsideration") (collectively, "Motions for Reconsideration").

[5]  Dkt. Nos. 81 ("Response to GE Healthcare, GE, Chemours, & DuPont"); 82 ("Response to Sanofi & STWB"); 83 ("Response to AMRI & AMRI-Rensselaer").

Authority"), and a reply, Dkt. No. 87-1 ("Sanofi & STWB Reply"). Plaintiff has filed a sur-reply

to the Sanofi & STWB Reply. Dkt. No. 90 ("Sur-Reply to Sanofi & STWB").

For the following reasons, the Court denies the Motions for Reconsideration.

## II.    BACKGROUND

The facts and allegations in this case were detailed in the February 2020 Memorandum-

Decision and Order, familiarity with which is assumed. The Court briefly summarizes the

relevant facts and allegations as follows.

Plaintiff's claims arise from its ownership of certain real property located in Rensselaer,

New York along the Hudson River (the "General Aniline Site"). Compl. ¶ 15. "Adjacent to the

General Aniline Site to the north" lies another parcel of real property that Plaintiff does not own

(the "Sterling Site"). Id. ¶ 17.

In 2001, under the oversight of the New York State Department of Environmental

Conservation ("NYSDEC"), Plaintiff began conducting an investigation into and remediation of

hazardous substances located at the General Aniline Site. Compl. ¶ 57. In 2003, NYSDEC issued

a Record of Decision ("ROD") that outlined the steps BASF was required to take for removing

hazardous substances from the General Aniline Site, a site which the 2003 ROD refers to as

"Operable Unit 1" ("OU–1"). GE Healthcare & GE Mot. to Dismiss, Ex. A ("2003 ROD").[6] The

2003 ROD differentiated between OU–1 and "Operable Unit 2" ("OU–2"), which includes

Hudson River sediments and other off-site areas that may have been impacted by contamination

---

[6] Since this is a public record, the Court may consider this document. See Moore U.S.A.,
Inc. v. Standard Register Co., 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (citing, inter alia,
Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1197 (3d Cir. 1993))
(noting that the Court may rely upon public records, such as "letter decisions of government
agencies, published reports, [or] records of administrative agencies . . . .").

migrating from the General Aniline Site. Id. at 8. Plaintiff remediated OU–1 in accordance with an Administrative Order of Consent ("AOC") issued by the NYSDEC in 2003. GE Healthcare & GE Mot. to Dismiss, Ex. B ("2003 AOC").[7]

In 2016, NYSDEC issued another ROD ("2016 ROD") "for OU[–]2 that requires a remediation involving the removal of approximately 38,700 cubic yards of contaminated sediment from the Hudson River, the installation of a cover system, and, for the southern portions of the investigation area, a monitored natural recovery program." Compl. ¶ 64. Prior to the 2016 ROD, Plaintiff discovered that discharges from the sewer line connecting the General Aniline Site and Sterling Site had contaminated Hudson River sediments within OU–2. See id. ¶ 63. Plaintiff entered into another AOC with the NYSDEC in 2017 ("2017 AOC"), which required Plaintiff to remediate the Hudson River sediments in OU–2. Id. ¶ 65. The investigation and remediation of the contamination within OU–2 is estimated to cost around $46.9 million, of which Plaintiff has already paid $12.2 million. Id. ¶¶ 66–67. Plaintiff "has also incurred costs for natural resource damages ('NRD') claims related to OU–2." Id. ¶ 68.

Plaintiff's claims concern the investigation and remediation of the contamination within OU–2, not OU–1. See id. ¶¶ 86–102.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) governs the analysis of the Motion for Reconsideration since the "Court did not enter a judgment following its ruling on the motion[] to dismiss." See Buczakowski v. 1199SEIU, No. 18-CV-812, 2020 WL 2092480, at *1 (N.D.N.Y.

---

[7] Likewise, since this is a public record, the Court may consider this document. See Moore U.S.A., Inc., 139 F. Supp. 2d at 363.

May 1, 2020) (Kahn, J.) (quoting <u>Ferring B.V. v. Fera Pharm., LLC</u>, No. 13-CV-4640, 2015 WL

5307793, at *1 (E.D.N.Y. Sept. 10, 2015)); <u>see also</u> <u>Cantey v. Martuscello</u>, No. 17-CV-284,

2020 WL 1030646, at *3 (N.D.N.Y. Mar. 3, 2020) (Kahn, J.) (finding that a motion for

reconsideration is "properly brought under Rule 54(b)" when it addresses a decision that partially

denies a motion for summary judgment).

Rule 54(b) provides in relevant part:

> [A]ny order or other decision, however designated, that adjudicates
> fewer than all the claims or the rights and liabilities of fewer than all
> the parties does not end the action as to any of the claims or parties
> and may be revised at any time before the entry of a judgment
> adjudicating all the claims and all the parties' rights and liabilities.

As another court in this District has observed:

> Motions under Rule 54(b) are subject to the law-of-the-case doctrine.
> <u>In re Rezulin Liability Litigation</u>, 224 F.R.D. 346, 349 (S.D.N.Y.
> 2004). This means that the decisions referenced in Rule 54(b) "may
> not usually be changed unless there is 'an intervening change of
> controlling law, the availability of new evidence, or the need to
> correct a clear error or prevent a manifest injustice." <u>Official Comm.</u>
> <u>of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand,</u>
> <u>LLP</u>, 322 F.3d 147, 167 (2d Cir. 2003) (citing <u>Virgin Atl. Airways,</u>
> <u>Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)).
> This allows for decisions to be revisited, "subject to the caveat that
> 'where litigants have once battled for the court's decision, they should
> neither be required, nor without good reason permitted, to battle for
> it again.'" <u>Id.</u> (citing <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 953 (2d
> Cir. 1964)).

<u>Kaufman v. Columbia Mem'l Hosp.</u>, No. 11-CV-667, 2014 WL 2776662, at *2 (N.D.N.Y. June

19, 2014).

Hence, "[t]he standard for granting a motion for reconsideration [under Rule 54(b)] 'is

strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Brooks v. Hogan, No. 14-CV-477, 2017 WL 1025966, at *2 (N.D.N.Y. Mar. 16, 2017) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)).

## IV.   DISCUSSION

GE Healthcare, GE, Chemours, and DuPont argue that reconsideration of the Court's February 2020 Memorandum-Decision and Order is warranted because the Court clearly erred and was manifestly unjust in finding that Plaintiff's § 113(f)(3)(B) claims are not time-barred. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 1–3. Sanofi and STWB argue for reconsideration of the same finding, though they have not asserted any of the grounds for reconsideration: an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. See Kaufman, 2014 WL 2776662, at *2.[8] The defendants request that, should the Court deny their Motions for Reconsideration, the Court, under 28 U.S.C. § 1292(b), certify for interlocutory appeal the question of whether § 113(g)(2)(B)'s six-year limitations period for remedial actions applies to Plaintiff's § 113(f)(3)(B) claims. See GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 18–22; Sanofi & STWB Mot. for Recons. at 6–8.

AMRI-Rensselaer argues reconsideration is needed because the Court improperly found that Plaintiff plausibly alleged that AMRI-Rensselaer can be held directly liable to Plaintiff under

_____

[8]  This fact alone is enough to reject Sanofi and STWB's argument since the argument reflects nothing more than "a mere disagreement" with the Court, which "is not a basis for reconsideration." See Fitzgerald v. City of Troy, N.Y., No. 10-CV-451, 2013 WL 5442274, at *6 (N.D.N.Y. Sept. 27, 2013).

§ 107(a)(1) as a current owner of the Sterling Site. <u>See</u> AMRI & AMRI-Rensselaer Mot. for

Recons. at 1.[9]

The Court will consider each of these arguments and requests in turn.

**A.  Limitations Period Applicable to Plaintiff's § 113(f)(3)(B) Claims**

At issue on reconsideration, as on motion to dismiss, is the appropriate limitations period

to apply to Plaintiff's § 113(f)(3)(B) claims. The provisions of CERCLA relevant to the

disposition of the instant motions state in pertinent part:

> (g) Period in which action may be brought
>
> ***
>
>> (2) **Actions for recovery of costs** An initial action for recovery of the costs referred to in section [107] of this title must be commenced—
>>
>> ***
>>
>>> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action
>>
>> ***
>>
>> (3) **Contribution** No action for contribution for any response costs or damages may be commenced more than 3 years after
>>
>>> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>>>
>>> (B) the date of an administrative order under section [122(g)] of this title (relating to de minimis settlements) or [122(h)] of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

---

[9]  Though AMRI and AMRI-Rensselaer jointly filed a motion for reconsideration, the motion solely pertains to Plaintiff's § 113(f)(3)(B) claim against AMRI-Rensselaer. <u>See</u> <u>id.</u>

7

§ 113(g)(2)–(3).

      *1. The Interplay of §§ 113(g)(2)(B) and 113(f)(3)(B)*

GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB argue there are instances,

such as this case, in which § 113(g)(2)(B)'s six-year limitations period for remedial actions

applies to § 113(f)(3)(B) claims. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at

10–22; Sanofi & STWB Mot. for Recons. at 3–6.

As an initial matter, the Court observes that GE Healthcare, GE, Chemours, DuPont,

Sanofi, and STWB previously made this argument in their motion-to-dismiss briefing, <u>see</u> GE

Healthcare and GE's Mot. to Dismiss at 20–21 (arguing that § 113(g)(2)(B)'s limitations period

should apply to Plaintiff's § 113(f)(3)(B) claims); Chemours and DuPont's Mot. to Dismiss at 7

(same), or are raising it for the first time on reconsideration, <u>see</u> STWB Mot. to Dismiss at 8

(asserting that only § 113(g)(3)'s limitations period applies to § 113(f)(3)(B) claims); Sanofi

Mot. to Dismiss at 14–15 (same).[10] Regardless, "a motion for reconsideration is neither an

occasion for repeating old arguments previously rejected nor an opportunity for making new

arguments that could have been previously advanced." <u>Associated Press v. U.S. Dep't of Def.</u>,

---

    [10]   That STWB and Sanofi are now arguing that § 113(g)(2)(B)'s limitations period may
apply to § 113(f)(3)(B) claims, when they previously contended that only § 113(g)(3)'s
limitations period governs § 113(f)(3)(B) claims, "taxes the credulity of the credulous." <u>See</u>
<u>Maryland v. King</u>, 569 U.S. 435, 466 (2013) (Scalia, J., dissenting). "In essence, [STWB] is not
asking the Court for a reconsideration of the issue presented in its initial Motion to Dismiss, but
is filing a brand new motion to dismiss. As such, [STWB's] Motion for Reconsideration is
denied." <u>See</u> <u>Cincinnati Ins. Co. v. Schornberg</u>, No. 12-CV-446, 2013 WL 12156116, at *2
(M.D. Fla. Aug. 12, 2013) (denying an argument on reconsideration that was contrary to an
argument raised on motion to dismiss); <u>see also</u> <u>Libertarian Nat. Comm., Inc. v. Fed. Election</u>
<u>Comm'n</u>, 950 F. Supp. 2d 58, 62 (D.D.C. 2013) ("The Court fails to see how it committed a
'clear error' of law by pursuing a course of action that agency counsel agreed was legally
permissible when specifically asked. The fact that the agency now appears to be having second
thoughts about its position does not satisfy the [motion for reconsideration] standard.")

395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Accordingly, the Court rejects GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB's argument.

Considering the merits of their argument nevertheless, the Court does not find it persuasive. In their Motions for Reconsideration, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB conveniently ignore a Second Circuit decision, Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., that states unequivocally that "[c]laims under § 107[(a)] do enjoy a six-year statute of limitations *while* claims under § 113[(f)] have a three-year statute of limitations." 596 F.3d 112, 128 n.19 (2d Cir. 2010) (emphasis added) (citing § 113(g)).[11] To clarify, Niagara Mohawk is saying that § 107(a) claims for remedial response costs are governed by § 113(g)(2)(B)'s six-year limitations period for remedial actions, while § 113(f)(3)(B) claims are controlled by § 113(g)(3)'s three-year limitations period for claims arising from a judgment or settlement agreement. As the Court previously noted, "Plaintiff seeks contribution under the 2017 AOC for costs associated with investigating and remediating the contamination of OU–2." Feb. 2020 Mem.-Decision and Order at 18. Because "the 2017 AOC is an administrative settlement for the purposes of § 113(f)(3)(B)," Plaintiff's § 113(f)(3)(B) claims brought pursuant to the 2017 AOC are subject to § 113(g)(3)'s limitations period. See Niagara Mohawk, 596 F.3d at 128 n.19.[12]

---

[11]   That GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB do not acknowledge Niagara Mohawk "is even more remarkable because the Court cited [the case] extensively in its [February 2020 Memorandum-Decision and Order]." Resp. to GE Healthcare, GE, Chemours, & DuPont at 19; Resp. to Sanofi & STWB at 14; see Feb. 2020 Mem.-Decision and Order at 8, 10, 12, 14, 23, 25 (citing Niagara Mohawk).

[12]   Sanofi and STWB argue that Niagara Mohawk is unavailing to Plaintiff because it is somehow limited to the facts of that case. See Sanofi & STWB Reply at 3. Yet Sanofi and STWB do not cite to any part of the decision that indicates Niagara Mohawk is so limited.

Despite this clear statement from <u>Niagara Mohawk</u> on the limitations period applicable to § 113(f)(3)(B) claims, GE Healthcare, GE, Chemours, and DuPont assert that "[w]hen read together and as a whole, as required by well-accepted rules of statutory construction, [§ 113(g)(2)–(3)] make clear that once a party begins construction of 'the' remedial action at a site, that party has 6 years to seek recovery of its response costs." GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 15. The import of GE Healthcare, GE, Chemours, and DuPonts's argument is that the Court clearly erred and was manifestly unjust in concluding that Plaintiff's § 113(f)(3)(B) claims are not time-barred since more than six years elapsed between 2001, which is when Plaintiff began remediating OU–1, Compl. ¶ 57, and 2019, which is when Plaintiff brought its contribution claims associated with remediating OU–2, <u>id.</u>

However, a review of the statutory language, structure, and legislative history of § 113(g)(2)–(3), as GE Healthcare, GE, Chemours, and DuPont acknowledge the Court must review, GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 15 (citing <u>W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.</u>, 559 F.3d 85, 88 (2d Cir. 2009) ("[W]e must look to the particular statutory language at issue, as well as the language and design of the statute as a whole, and, where appropriate, its legislative history.")), suggests that § 113(f)(3)(B) claims are governed by § 113(g)(3)'s three-year limitations period alone. As the Sixth Circuit has observed:

> The dissent also contends that . . . Congress did "not evince any intent . . . to codify a uniform three-year statute of limitations for all contribution[,] [i.e., § 113(f)] actions." Dissent at 563. But the legislative history suggests that is just what the [Congress] had in mind, <u>see</u> H.R. Rep. No. 253, pt. I, at 79 (1985) ("This section establishes a three-year statute of limitations for the filing of an action for contribution for response costs or damages.") . . . . The face of the

---

Consequently, the Court still finds <u>Niagara Mohawk</u> applicable to this action.

> amendments, more importantly, reveals a design to codify one limitations period for contribution actions and another period for cost-recovery[,] [i.e., § 107(a)] actions—one subsection authorizes contribution actions, (entitled "(f) Contribution"); another places a limitations period on contribution actions, see [§ 113(g)(3)] (entitled "(g) Period in which action may be brought" and "(3) Contribution"); whereas a third imposes a limitations period on cost-recovery actions, see [§ 113(g)(2)] (entitled "Actions for recovery of costs").

RSR Corp. v. Commercial Metals Co., 496 F.3d 552, 558 (6th Cir. 2007); see also Cranbury Brick Yard, LLC v. United States, 943 F.3d 701, 712 (3d Cir. 2019) (citing the above-quoted passage from RSR Corp. and noting the fact that § 107(a) and § 113(f) were enacted "six years apart" indicates that only § 113(g)(3)'s limitations period applies to § 113(f)(3)(B) claims).

GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB make two additional arguments suggesting § 113(g)(2)(B)'s limitations period applies to § 113(f)(3)(B) claims, which the Court must reject because of Niagara Mohawk.

First, GE Healthcare, GE, Chemours, and DuPont argue that § 113(g)(3)'s limitations period does not apply to Plaintiff's § 113(f)(3)(B) claims because Plaintiff seeks contribution for the response costs it incurred and will incur to remediate OU–2 (i.e., first-party response costs), rather than reimbursement for response costs it disproportionately paid to a third party, such as a governmental entity (i.e., third-party response costs). GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 10–13. The implication of this argument is that § 113(g)(2)(B) must apply to Plaintiff's § 113(f)(3)(B) claims because § 113(g)(2)(B) "applies to actions seeking recovery of first-party response costs incurred by a party [like Plaintiff] in performing a . . . remedial action." Id. at 19. However, the plaintiff in Niagara Mohawk also sought first-party response costs under § 113(f)(3)(B). See 596 F.3d at 118–19. And that court did not hold that § 113(g)(3)'s limitations

11

period does not apply to the plaintiff's § 113(f)(3)(B) claims. Instead, as noted above, the Second

Circuit stated unambiguously that "claims under § 113[(f)] have a three-year statute of

limitations" as described in § 113(g)(3). 596 F.3d at 128 n.19. Thus, § 113(g)(3) applies to

§ 113(f)(3)(B) claims for first-party and third-party response costs alike.

Second, Sanofi and STWB argue that "contrary to BASF's assertion, [§§ 107(a)

and 113(f)] are not wholly independent as BASF would have the Court believe. They do in fact

overlap, the outcome of which, including the applicable [statute of limitations], will depend on

the nature of the response costs being incurred, as well as the procedural status of the parties."

Sanofi & STWB Reply at 2. The implication of Sanofi and STWB's argument is that

§ 113(g)(2)(B)'s limitations period may apply to § 113(f)(3)(B) claims. In support of their

argument, Sanofi and STWB cite to a passage from United States v. Atl. Research, 551 U.S. 128

(2007), which says:

> We do not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap
> at all. For instance, we recognize that a [potentially responsible party]
> ["PRP"] may sustain expenses pursuant to a consent decree following
> a suit under § 106 or § 107(a). In such a case, the PRP does not incur
> costs voluntarily but does not reimburse the costs of another party.
> We do *not decide* whether these compelled costs of response are
> recoverable under § 113(f), § 107(a), or both.

551 U.S. at 139 n.6 (emphasis added).

As an initial matter, the Court rejects Sanofi and STWB's argument because the parties

once again have contradicted themselves on reconsideration. See Cincinnati, 2013 WL

12156116, at *2; Libertarian Nat. Comm., Inc., 950 F. Supp. 2d at 62. In its motion-to-dismiss

briefing, Sanofi asserted that §§ 107(a) and 113(f) provide "clearly distinct remedies to persons

in different procedural circumstances . . . [r]egardless of the nature of the response costs being

incurred or reimbursed." Sanofi Mot. to Dismiss at 9 (citation and internal quotation marks

omitted). And in its motion-to-dismiss briefing, STWB maintains that §§ 107(a) and 113(f)

supply "mutually exclusive remedies." STWB Mot. to Dismiss at 5 (citing Niagara Mohawk, 596

F.3d. at 128). Now, however, as noted above, Sanofi and STWB contend the opposite of what

they argued on motion to dismiss.

Considering the merits of Sanofi and STWBs's argument anyway, the Court does not find

it compelling. Sanofi and STWB state that Atl. Research "*expressly held* that [§§ 107(a) and

113(f)] overlap." Sanofi & STWB Reply at 2 (emphasis added). But, as demonstrated in the

quote above from Atl. Research, the Supreme Court "was expressly *not deciding* whether there is

any overlap between the two CERCLA causes of action." Sur-Reply to Sanofi & STWB at 5

(emphasis in original). Consequently, Sanofi and STWBs's reliance on the above-quoted

footnote from Atl. Research is persuasive at best. And that persuasiveness is limited since the

passage simply addresses the possibility that a party may bring claims under multiple provisions

of CERCLA; it does not comment on what limitations period applies to those claims. "Moreover,

while the [] Supreme Court may have left an open question in Atl. Research [regarding the

overlap of §§ 107(a) and 113(f) claims], that question was subsequently closed by the Second

Circuit, at least as it applies to the instant case." Sur-Reply to Sanofi & STWB at 5. In Niagara

Mohawk, the court observed:

> To the extent that NiMo seeks recovery of its actual response costs
> and does not seek reimbursement from others for response costs it
> disproportionately paid to a third party, NiMo's claims do not seem
> to fit the common law definition of contribution that the Supreme
> Court employed in defining the statutory term in Atl. Research. The
> Atl. Research Court, however, recognized that there could be an
> overlap of the concepts of cost recovery and contribution. Atl.

13

> Research, 551 U.S. at 139 n.6 []. NiMo was partially responsible for the contamination at the Water Street Site. It avoided a state or federal cleanup of the Site and a subsequent suit by New York or the United States under § 107(a) for reimbursement of those costs by entering into the Consent Orders. NiMo in essence financed the cleanup. While NiMo's claims might fall within "the overlap" of the concepts of cost recovery and contribution recognized by Atl. Research, "concepts" do not alter the plain language of the statute in play here. NiMo's claims clearly meet the more specific parameters of the terms of § 113(f)(3)(B).

596 F.3d at 127 n.18. Accordingly, not only has the Second Circuit stated that § 113(f)(3)(B) is governed by § 113(g)(3)'s limitations period, but it has also held that contribution claims for first-party response costs, such as Plaintiff's, clearly fall under § 113(f)(3)(B), not § 107(a). This means that there is no possible overlap between §§ 107(a) and 113(f) that would suggest § 113(g)(2)(B)'s limitations period might apply to Plaintiff's § 113(f)(3)(B) claims.[13]

## 2. The Applicability of the NYSEG and Schaefer Decisions

As discussed above, Niagara Mohawk stated that § 113(f)(3)(B) claims are governed by § 113(g)(3)'s limitations period. Nevertheless, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB rely on a pair of other Second Circuit cases, New York State Elec. and Gas Corp. v. FirstEnergy Corp., 766 F.3d 212 (2d Cir. 2014) ("NYSEG") and Schaefer v. Town of Victor, 457 F.3d 188 (2d Cir. 2006), which purportedly require a new finding that Plaintiff's § 113(f)(3)(B) claims are time-barred under § 113(g)(2)(B)'s limitations period. However, as shown below, both NYSEG and Schaefer involve materially different facts and so do not mandate such a finding.

---

[13]  It also suggests, in further response to GE Healthcare, GE, Chemours, & DuPonts's argument above that § 113(g)(2)(B)'s limitations period applies to § 113(f)(3)(B) claims for first-party response costs, that § 113(g)(3)'s limitations period actually applies to such claims.

a. NYSEG

GE Healthcare, GE, Chemours, and DuPont argue that there may only be one limitations period per site. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 8 (citing NYSEG, 766 F.3d at 235–36). They assert that, like in NYSEG, OU–1 and OU–2 are part of one site and that the limitations period for that site began to run in 2001 when Plaintiff began remediating OU–1, Compl. ¶ 57, and, per § 113(g)(2)(B), expired six years later. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 8–9.

To start, the Court previously found NYSEG inapplicable to resolving the question of whether Plaintiff's § 113(f)(3)(B) claims are time-barred. See Feb. 2020 Mem.-Decision and Order at 17.[14] Hence, to the extent GE Healthcare, GE, Chemours, and DuPont argue the Court must reconsider the applicability of NYSEG to Plaintiff's § 113(f)(3)(B) claims, the Court rejects that argument because motions for reconsideration are not meant to provide "a second bite of the

---

[14]  More specifically, the Court noted:

> NYSEG addressed claims brought solely under § 107(a), which is governed by a limitations period in which the triggering event is whether the plaintiff is recovering costs based on "*remedial*" work or "*removal*" work. § 113(g)(2) (emphasis added). NYSEG upheld the lower-court's holding that "there can only be one remedial action at any given site," and therefore ruled the limitations began to run on the plaintiff's claims once it began remediating [OU–1]. NYSEG, 766 F.3d at 235–36. In this case, Plaintiff's § 113(f)(3)(B) claims are governed by a limitations period in which the triggering event is whether a plaintiff has received a *judgment* or entered a *judicially approved settlement*. § 113(g)(3) (emphasis added). Since Plaintiff's § 113(f)(3)(B) claims are not predicated on remedial or removal actions taken at OU–1 and OU–2, NYSEG's ruling is inapposite here. In sum, the Court declines to extend NYSEG to a case with a different type of claim brought under a different limitations period.

Id.

15

apple [to] reargu[e] an issue that this Court has already resolved." <u>See</u> <u>Fitzgerald</u>, 2013 WL 5442274, at *6.[15]

Even if the Court were to address the merits of the parties' arguments, the Court would still find <u>NYSEG</u> inapplicable here. GE Healthcare, GE, Chemours, and DuPont argue that "[a] failure to apply <u>NYSEG</u>'s 'one site-one remedy' rule in the Section 113 context will create perverse results at odds with CERCLA's statutory scheme" because it "reward[s]" parties "with one or more limitations periods if [they] delay[] or refuse[] to" clean up hazardous waste sites. <u>See</u> GE Healthcare, GE, Chemours, DuPont Mot. for Recons. at 9; <u>see also</u> <u>id.</u> at 18 ("All [a plaintiff] need do after the six-year limitations expires is to stop implementing the remedial action, wait as many years at it wishes, and then execute a Section 13(f)(3)(B) administrative order to complete the remedial action it had already started."). According to GE Healthcare, GE, Chemours, and DuPont, this is what happened here, as the Court concluded "claims brought under the 2017 AOC are 'governed by a different statute of limitations' than claims brought under the 2003 AOC," Feb. 2020 Mem.-Decision and Order at 18 (quoting <u>Bernstein v. Bankert</u>, 733 F.3d 190, 215 (7th Cir. 2013)),[16] even though Plaintiff purportedly "dragged its feet and

---

[15] Sanofi and STWB argue that, "assuming, arguendo, that [] the 3-year [limitations period] in Section 113(g)(3) for contribution actions applied to Plaintiff's contribution claim, the claim is untimely" because OU–1 and OU–2 are part of one site and the limitations period for the site began to run with the 2003 AOC and expired thirteen years before Plaintiff filed this suit in 2019. <u>See</u> Sanofi & STWB Mot. for Recons. at 6. As Plaintiff notes, "this issue has already been decided by the Court in its February 12, 2020 decision and Sanofi and STWB do not cite to any contrary authority to demonstrate a clear error of law." Resp. to Sanofi & STWB at 12 n.5; <u>see</u> Feb. 2020 Mem.-Decision and Order at 16–18. Therefore, Sanofi and STWBs's argument boils down to "a mere disagreement" with the Court, which "is not a basis for reconsideration." <u>See</u> <u>Fitzgerald</u>, 2013 WL 5442274, at *6.

[16] Sanofi and STWB argue that the Court improperly relied upon <u>Bernstein</u> because that case addressed CERCLA claims grounded in "two settlements . . . for interim *removal* actions for

waited more than a decade before entering into the 2017 AOC concerning the continuation of the

remedial action in the OU–2 portion of the site," GE Healthcare, GE, Chemours, & DuPont Mot.

for Recons. at 7.[17]

Yet GE Healthcare, GE, Chemours, and DuPont have not provided any evidence to

support the bald assertion that Plaintiff somehow sat on its rights before seeking recovery of its

OU–2 response costs and "while the evidentiary record fade[d] and ultimately disappear[ed]."

See GE Healthcare, GE, Chemours, DuPont Mot. for Recons. at 17.[18] Rather, Plaintiff's

allegations suggest that Plaintiff sought recovery of those costs in a timely manner. Plaintiff avers

---

the same site, not two settlements occurring during a *remedial* action of the same site." Sanofi &
STWB Mot. for Recons. at 4 (emphasis in original) (citing 733 F.3d at 215). The implication of
Sanofi and STWBs's argument is that Bernstein is inapposite because the 2003 AOC and 2017
AOC address remedial, not removal, actions. As an initial matter, "Remedial actions are
generally long-term or permanent containment or disposal programs, while removal efforts are
typically short-term cleanup arrangements." Feb. 2020 Mem.-Decision and Order at 17 n.21
(citations and internal quotation marks omitted). Even assuming the distinction Sanofi and
STWB attempt to draw between Bernstein and this case is valid, that distinction is not a
meaningful one. Section 113(f)(3)(B) claims, such as Plaintiff's, are predicated on administrative
or judicially-approved settlements that resolve the "liability to the United States or a State for
some or all of a *response* action or for some of all of the costs of such action." § 113(f)(3)(B)
(emphasis added). Under CERCLA, "'response' means remove, removal, remedy, *and* remedial
action . . . ." § 101(25) (emphasis added). Hence, § 113(f)(3)(B) is not concerned with whether
the settlement agreement covers a removal or remedial action; instead, what matters is whether
the settlement resolves liability for some sort of response action (whether that may be one based
in removal or remediation). In sum, Sanofi and STWB do not materially distinguish Bernstein
from this case.

   [17] Without any elaboration, Sanofi and STWB similarly assert that, "[f]or unknown
reasons, Plaintiff sat on its contribution rights after signing the 2003 [AOC], which cannot be
resurrected by signing a new order 14 years later." Sanofi & STWB Mot. for Recons. at 6.

   [18] Furthermore, GE Healthcare, GE, Chemours, and DuPont have not clarified why a
plaintiff would somehow delay bringing a CERCLA claim since a non-existent evidentiary
record would make it exceedingly difficult, if not impossible, for the plaintiff to prosecute that
claim.

that it entered into a second settlement agreement with the NYSDEC—the 2017 AOC—one year

after the NYSDEC issued another ROD based on Plaintiff's investigation into the sources of

contamination of the Hudson River sediments within OU–2. Compl. ¶¶ 64–65.[19] And Plaintiff

sought recovery of its OU–2 response costs within two years of entering into the 2017 AOC. Id.

Consequently, allowing multiple limitations per settlement agreement does not produce perverse

results, but rather "ensure[s] that the responsible parties get to the bargaining—and

clean-up—table sooner rather than later." See RSR Corp., 496 F.3d at 559 (citing H.R. Rep. No.

253, pt. I, at 80)).

      In sum, GE Healthcare, GE, Chemours, and DuPont have not identified how declining to

extend NYSEG to Plaintiff's § 113(f)(3)(B) claims "was a clear error of law that will work a

manifest injustice in this case and add significant confusion to parties involved in CERCLA

litigation." See GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 8.

### b.  Schaefer

      GE Healthcare, GE, Chemours, and DuPont argue that another Second Circuit case,

Schaefer, "mandates the dismissal of all of plaintiff's CERCLA claims as untimely." GE

Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 6. In the late 1980s, the plaintiff in

Schaefer began to clean up hazardous waste that leached from his landfill. 457 F.3d at 204–05.

The plaintiff then entered into two consent orders—one in 1990 and one in 1992—with the

NYSDEC regarding deposits of hazardous waste at the landfill. Id. at 191–92. In 1994, the New

---

    [19]  The Court may accept Plaintiff's allegations as true because this opinion addresses motions to reconsider a decision granting in part and denying in part motions to dismiss, see Allen v. Antal, No. 12-CV-8024, 2014 WL 2526913, at *2 (S.D.N.Y. June 3, 2014), and the parties have proffered no evidence that may have been produced to date in discovery.

York Supreme Court issued a consent judgment approving the 1992 consent order. Id. at 202 n.19. Finally, in 1999, the plaintiff sought to recover his response costs under § 107(a) for cleaning up the landfill. Id. at 193, 197. Because the plaintiff did not bring suit until more than six years after he began remediating the hazardous substances from his landfill, the court found that the plaintiff's claims were time-barred under § 113(g)(2)(B). Id. at 205.

According to GE Healthcare, GE, Chemours, and DuPont, the court "found it unnecessary to decide whether a subsequent 1994 Consent Judgment (approving a 1992 Consent Order) constituted a judicially approved settlement within the meaning of [§ 113(f)(3)(B)] so as to trigger the three-year limitations period at [§ 113(g)(3)], because that 1994 Consent Judgment post-dated the initiation of the remedial action." Id. (citing Schaefer, 457 F.3d at 202 n.19). Applying the logic of Schaefer to § 113(f)(3)(B) claims, GE Healthcare, GE, Chemours, and DuPont would have the Court conclude that the 2017 AOC is irrelevant to deciding whether the limitations period for Plaintiff's § 113(f)(3)(B) claims has expired because it post-dates the initiation of Plaintiff's remediation of OU–1, which began in 2001. See GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 6. Since Plaintiff began remediating OU–1 more than six years before bringing this action, GE Healthcare, GE, Chemours, and DuPont contend that Plaintiff's claims associated with remediating OU–2 are long time-barred. See id. Yet GE Healthcare, GE, Chemours, and DuPonts's reliance on Schaefer is problematic for two reasons.

First, GE Healthcare, GE, Chemours, and DuPont have misread Schaefer. The Schaefer court did not find it unnecessary to decide whether the 1994 consent judgment constituted a judicially approved settlement, and if so, whether that order triggered § 113(g)(3)'s limitations period, because the judgment post-dated the initiation of the cleanup. Rather, the Second Circuit

found it unnecessary to decide these questions because the court concluded that the plaintiff had a § 107(a)—not § 113(f)(3)(B)—claim and that claim was therefore governed by § 113(g)(2)(B)'s limitations period. See Schaefer, 457 F.3d at 202 n.19 ("However, because we conclude that Schaefer may bring this claim under § 107(a), we need not decide whether the 1994 Consent Judgment constitutes a judicially approved settlement and, if so, whether the three-year statute of limitations under CERCLA § 113(g)(3) began to run at the time of this settlement . . . . Because we conclude that Schaefer may bring this claim under § 107(a), the question of whether or not Schaefer satisfied the applicable statute of limitations under § 107(a) resolves this case."). Since Plaintiff has a § 113(f)(3)(B)—not § 107(a)—claim, Schaefer is inapplicable to this action.[20]

Second, Schaefer is also distinguishable from the facts of this action because that case did not involve multiple operable units. Consequently, as evidenced by GE Healthcare, GE, Chemours, and DuPonts's briefing, one would need to rely on NYSEG to extend Schaefer to this case. See GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 6 ("Given that Plaintiff initiated the remedial action before entering into any remedial consent orders and that *there can be only one remedial action at the Site after NYSEG*, the precedent of Schaefer mandates the dismissal of all of [P]laintiff's CERCLA claims as untimely." (emphasis added)). Because the Court has found NYSEG to be inapplicable to this case, GE Healthcare, GE, Chemours, and DuPonts's reliance upon Schaefer remains unavailing.

---

[20] Sanofi and STWB seem to agree. See Sanofi & STWB Mot. for Recons. at 7 (noting Schaefer did not "involve[] the specific fact pattern of this case."

In sum, the Court does not find <u>Schaefer</u> to be a "controlling decision[] . . . that might reasonably be expected to alter the conclusion reached by the court." <u>Brooks</u>, 2017 WL 1025966, at *2.

### 3.  Request for Interlocutory Appeal

Finally, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB request that, should the Court deny their Motions for Reconsideration, the Court, under 28 U.S.C. § 1292(b), certify for interlocutory appeal the question of whether § 113(g)(2)(B)'s limitations period applies to Plaintiff's § 113(f)(3)(B) claims. <u>See</u> GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 18–22; Sanofi & STWB Mot. for Recons. at 6–8. More specifically, GE Healthcare, GE, Chemours, and DuPont request that the Court certify "whether [§ 113(g)(2)(B)] applies [to § 113(f)(3)(B) claims] whenever a party seeks first-party response costs versus third-party response costs." GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20. While Sanofi and STWB do not clearly articulate the question they would like certified, the Court construes their briefing to request the Court certify whether § 113(g)(2)(B)'s limitations period applies to § 113(f)(3)(B) claims when the party begins remediating the first operable unit prior to entering a settlement agreement governing response costs incurred at a second operable unit. <u>See</u> Sanofi & STWB Mot. for Recons. at 6–8. As implied by the discussion above and elaborated further below, the Court rejects the parties' requests for interlocutory appeal.

"An interlocutory appeal should only be certified where the proposed appeal (1) 'involves a controlling question of law,' (2) 'as to which there is substantial ground for difference of opinion,' and (3) 'that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" <u>Youngers v. Virtus Inv. Partners Inc.</u>, 228 F. Supp. 3d at 298

21

(S.D.N.Y. 2017) (quoting § 1292(b)). "The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met." In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014) (citing Casey v. Long Island R.R., 406 F.3d 142, 146 (2d Cir. 2005)). "Though the statute mandates that trial courts carefully assess whether each of the three conditions for certification is met, district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met." Ryan, Beck & Co., LLC v. Fakih, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003) (citations and internal quotation marks omitted).

As indicated above, the Court previously addressed whether § 113(g)(2)(B)'s limitations period applies to Plaintiff's § 113(f)(3)(B) claims. But a request "for certification of an interlocutory appeal may not be used to simply 'repeat arguments made in [a] motion to dismiss.'" See Facebook., 986 F. Supp. 2d at 531 (quoting S.E.C. v. Gruss, No. 11-CV-2420, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012)). For this reason, the Court rejects GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB's requests for interlocutory appeal.

Considering the merits of the parties' requests in any event, the Court finds that they have not satisfied § 1292(b)'s criteria for certification. GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB do not offer any arguments on § 1292(b)'s first and third requirements. Since they have not met their burden of establishing all three elements, their request must be rejected for this reason as well.

Finally, regarding the one criterion on which the parties do present arguments—substantial ground for difference of opinion—the Court does not find those arguments persuasive. "A substantial ground for difference of opinion exists when '(1) there is

22

conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" Facebook, 986 F. Supp. 2d at 539 (quoting Capitol Records, LLC v. Vimeo, LLC, 972 F.Supp.2d 537, 551 (S.D.N.Y. 2013)).

### a.  Conflicting Authority

First, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB argue that courts in other circuits disagree over whether § 113(g)(2)(B)'s limitation period can apply to § 113(f)(3)(B) claims. See GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20; Sanofi & STWB Mot. for Recons. at 7. The parties each cite to Geraghty & Miller, Inc. v. Conoco Inc., 234 F.3d 917 (5th Cir. 2000) and Sun Co. (R&M) v. Browning-Ferris, Inc., 124 F.3d 1187 (10th Cir. 1997) as two examples of appeals courts that have held that § 113(g)(2)(B)'s limitations period can apply to § 113(f)(3)(B) claims. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20 (citing Geraghty, 234 F.3d at 924–25 and Sun Co., 124 F.3d at 1192); Sanofi & STWB Mot. for Recons. at 3 (same). And as evidence of a circuit split, GE Healthcare, GE, Chemours, and DuPont cite to Hobart Corp. v. Waste Mgmt. of Ohio, Inc., which, in turn, unsurprisingly cites to Niagara Mohawk (among other cases) for the holding "that § 113(g)(2) is irrelevant to resolving whether Appellants' contribution action was timely filed and that § 113(g)(3) provides the statute of limitations for all contribution actions." GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20 (citing 758 F.3d 757, 773 (6th Cir. 2014)).

However, a review of the CERCLA landscape indicates that, while Geraghty and Sun Co. have not been expressly overruled, they are no longer good law. It also reveals that other appeals

courts besides the Sixth Circuit have held that § 113(f)(3)(B) claims are governed solely by

§ 113(g)(3)'s limitations period.

As the Hobart court observed:

> Here, Appellants are suing for contribution, not cost recovery, and the proper statute of limitations is in dispute. Appellants cite three other . . . cases for the proposition that contribution actions can be governed by the limitations found in § 113(g)(2). See Appellants Br. at 48 (citing *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917 (5th Cir. 2000); Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344 (6th Cir. 1998); *Sun Co. v. Browning–Ferris, Inc., 124 F.3d 1187 (10th Cir. 1997)*). However, these cases conceived of contribution actions as a subset of cost-recovery actions under § 107. See *Geraghty, 234 F.3d at 924*; Centerior, 153 F.3d at 353; *Sun Co., 124 F.3d at 1191*. [Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 161 (2004)] and Atlantic Research have clarified that §§ 107 and 113 offer distinct causes of action and, therefore, are governed by distinct statutes of limitations. Thus, the cases cited by Appellants are no longer good law on this point.

758 F.3d at 773–74 (emphasis added); see Cranbury Brick Yard, 943 F.3d at 712 (noting

Geraghty and Sun Co. "are stale" and that the court "agree[s]" with the Sixth Circuit that

Geraghty and Sun Co. "are no longer good law" for the proposition that 113(f)(3)(B) claims may

be governed by § 113(g)(2)(B)'s limitations period (quoting Hobart, 758 F.3d at 774)). The

Cranbury Brick Yard court also held that only § 113(g)(3)'s limitations period applies to

§ 113(f)(3)(B) claims. 943 F.3d at 712.[21, 22]

---

[21]  Sanofi and STWB cite no other cases besides Geraghty and Sun Co. See Sanofi & Mot. for Recons. at 3. However, they argue that, like Niagara Mohawk, Cranbury Brick Yard is inapposite because it is somehow limited to the facts of that case. See Sanofi & STWB Reply at 4. Yet Sanofi and STWB do not cite to any part of the decision that indicates Cranbury Brick Yard is so limited. Therefore, the Court still finds Cranbury Brick Yard applicable to this action.

[22]  GE Healthcare, GE, Chemours, and DuPont also cite Gen. Elec. Co. v. Am. Annuity Grp., Inc. as another example of a case holding that § 113(g)(2)(B)'s limitations period can apply to § 113(f)(3)(B) claims. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20

In addition to the Third Circuit and Sixth Circuit, the Seventh Circuit, Eighth Circuit,

Ninth Circuit, and DC Circuit have rendered the same holding. See Refined Metals Corp. v. NL

Indus. Inc., 937 F.3d 928, 929–30 (7th Cir. 2019) ("It matters, in our opinion, whether this is a

section 113(f)(3)(B) contribution action or a section 107(a) cost-recovery case. If it were the

latter, [per § 113(g)(2)] we would need to conduct a searching examination of what actions to

clean up the site anyone has taken, and when. But we can skip that inquiry, because we agree

with the district court that this is a section 113(f)(3)(B) contribution action, and [§ 113(g)(3)'s]

limitations period had expired by the time Refined filed suit.");[23] Morrison Enterprises, LLC v.

_____

(citing 137 F. Supp. 2d 1, 5 (D.N.H. 2001)). Yet, as Plaintiff notes, "since the American Annuity
case was decided in 2001 and its holding was expressly based on the holdings of [Geraghty] and
[Sun Co.], the American Annuity case is no longer good law as to the principle for which it was
cited." Resp. to GE Healthcare, GE, Chemours, & DuPont at 22 n.6 (citing American Annuity,
137 F. Supp. 2d at 5). Notably, as Plaintiff also observes, "GE took the position in the American
Annuity case that the [only] applicable statute of limitations for a Section 113 contribution claim
is the three-year limitations period set for in Section 113(g)(3)." Id.
    The final example cited by GE Healthcare, GE, Chemours, and DuPont is New York v.
Solvent Chem. Co. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 20 (citing 664
F.3d 22, 25 (2d Cir. 2011). According to GE Healthcare, GE, Chemours, and DuPont, Solvent
Chem. Co. "recogniz[ed] that several Circuits have applied Section 113(g)(2) to CERCLA
contribution claims under Section 113." Id. While, as Plaintiff notes, "the Solvent Chemical case
does discuss the application of Section 113(g)(2) to contribution claims, it does so only with
respect to whether or not a declaratory judgment can be entered for a Section 113 contribution
claim." Resp. to GE Healthcare, GE, Chemours, & DuPont at 22 n.6 (citing Solvent Chem. Co.,
664 F.3d at 25); Feb. 2020 Mem.-Decision and Order at 17, 24–25 (noting that § 113(g)(2)
provides a limitations periods for § 107(a) claims *and* for a "declaratory judgment on liability for
response costs or damages." (quoting § 113(g)(2)). Accordingly, the portion of Solvent Chemical
that GE Healthcare, GE, Chemours, and DuPont have cited has nothing to do with limitations
periods.

[23]  Sanofi and STWB state that Refined Metals supports their request for interlocutory
appeal. Sanofi & STWB Notice of Suppl. Auth. The Court is perplexed by this statement given
that the case clearly holds that § 113(g)(3) alone applies to § 113(f)(3)(B) claims. Additionally, to
the extent Sanofi and STWB argue Refined Metals somehow suggests Plaintiff's § 113(f)(3)(B)
claims are time-barred because Plaintiff knew from the 2003 ROD that it would have to
remediate OU–2, but did not sue to recoup costs associating with remediating OU–2 until 2019,

Dravo Corp., 638 F.3d 594, 609 (8th Cir. 2011) ("Section 113(g)(2) refers to initial and

subsequent actions to recover costs specifically under § 107, not contribution claims under

§ 113(g) . . . . Section 113(g)(3) sets forth a separate limitation period for contribution claims.

Allowing a contribution claim to serve as the initial action under § 113(g)(2) would

impermissibly subject the action to two different limitation periods."); Asarco LLC v. Atl.

Richfield Co., 866 F.3d 1108, 1117 (9th Cir. 2017) ("Sections 107(a) and 113(f) have different

statutes of limitations periods. An action for 'recovery of . . . costs' under § 107(a) 'must be

commenced . . . within 6 years after initiation of physical on-site construction of the remedial

action' or 'within 3 years after the completion of the removal action.' An action for contribution

of 'response costs or damages' under § 113(f), by contrast, 'may be commenced' no more than '3

years after . . . the date of . . . entry of a judicially approved settlement with respect to such costs

or damages." (quoting § 113(g)(2)–(3)); Gov't of Guam v. United States, 950 F.3d 104, 108

(D.C. Cir. 2020) ("[T]he statute of limitations for a contribution action is three years, see

CERCLA § 113(g)(3); the statute of limitations for a remedial section 107 action is six, id.

§ 113(g)(2)(B).").

---

see Sanofi & STWB Reply at 7–8, Sanofi and STWB have misread the case. Refined Metals
stands for the proposition that a § 113(f)(3)(B) claim accrues for limitations purposes at the time
"an administrative or judicially approved settlement" is executed, not at the time a governmental
agency approves the "corrective measures" for cleaning up hazardous waste from a site. 937 F.3d
at 930–33. Thus, Refined Metals is entirely consistent with the Court's finding that the
limitations period applicable to Plaintiff's § 113(f)(3)(B) claims seeking recovery of its OU–2
response costs was triggered by the 2017 AOC. See Feb. 2020 Mem.-Decision and Order at 18
("Because Plaintiff filed its Complaint within two years of the 2017 AOC, its § 113(f)(3)(B)
claims are not barred by the statute of limitations.").

In sum, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB have not shown that Courts disagree on whether § 113(f)(3)(B) claims are governed by § 113(g)(3)'s limitations period alone.

### b.  First Impression for the Second Circuit

Second, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB argue that the Second Circuit has not directly addressed whether § 113(g)(2)(B)'s limitations period applies to Plaintiff's § 113(f)(3)(B) claims. GE Healthcare, GE, Chemours, & DuPont Mot. for Recons. at 19–20; Sanofi & STWB Mot. for Recons. at 6–8. But, as noted above, the Second Circuit did address this issue in Niagara Mohawk, in which it stated, without qualification, that § 113(f)(3)(B) claims are governed by § 113(g)(3)'s limitations period. Niagara Mohawk, 596 F.3d 112, 128 n.19; see also Solvent Chem. Co., 664 F.3d at 26 (2d Cir. 2011) ("[T]here is a short statute of limitations for a [§ 113(f)(3)(B)] claim (three year statute of limitations from entry of judgment in cost recovery action, entry of administrative order, or judicially approved settlement)."). "Where the position of the Circuit court has been unequivocal, there is no substantial ground for difference of opinion meriting interlocutory review." See Sprinkle v. Robinson, No. 02-CV-1563, 2008 WL 1970562, at *1 (E.D. Cal. May 5, 2008) (citing, inter alia, Transport Workers of America, Local 100 v. N.Y. City Transit Auth., 358 F. Supp. 2d 347 (S.D.N.Y. 2005); Salim Oleochemicals, Inc. v. M/V SHROPSHIRE, 177 F. Supp. 2d 159 (S.D.N.Y. 2001)).

*     *     *

The Court still finds that only § 113(g)(3)'s limitations period applies to Plaintiff's

27

§ 113(f)(3)(B) claims. Because of this finding, GE Healthcare, GE, Chemours, DuPont, Sanofi, and STWB's request for interlocutory appeal is denied.

## B. AMRI-Rensselaer's Direct Liability

AMRI-Rensselaer argues that the Court improperly found that Plaintiff plausibly alleged that AMRI-Rensselaer is directly liable under § 107(a)(1) as a current owner of the Sterling Site. AMRI & AMRI-Rensselaer Mot. for Recons. at 1.[24] More specifically, AMRI-Rensselaer argues that a current owner of property is only liable under CERCLA when there is an ongoing release of hazardous substances on that property. Id. at 3–9. It also argues that the Court "erred" in failing to consider its § 107(b)(3) defense before concluding that Plaintiff had sufficiently averred that AMRI-Rensselaer is liable as a current owner of the Sterling Site. Id. at 3, 9–11.

To begin, the Court observes that AMRI-Rensselaer has not asserted any of the grounds for reconsideration: an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. See Kaufman, 2014 WL 2776662, at *2. Accordingly, AMRI-Rensselaer's arguments reflect nothing more than "a mere disagreement" with the Court, which "is not a basis for reconsideration." See Fitzgerald, 2013 WL 5442274, at *6. Furthermore, AMRI-Rensselaer previously argued that it cannot be directly liable to Plaintiff for hazardous materials that have previously been released or that have been released onto property is does not own. See AMRI & AMRI-Rensselaer Mot. to Dismiss at 16–20. Since, as noted above, "a motion for reconsideration is [not] an occasion for repeating old

---

[24]  The discussion of § 107(a)(1) below is in the context of Plaintiff's § 113(f)(3)(B) claim against AMRI-Rensselaer since a "claimant must still establish a prima facie case under § 107(a) to bring a contribution claim." See Feb. 2020 Mem.-Decision and Order at 9.

arguments previously rejected," see Associated Press, 395 F. Supp. 2d at 19, the Court rejects these arguments for this reason as well.

Considering the merits of AMRI-Rensselaer's arguments nevertheless, the Court does not find them convincing.

### 1. Ongoing Releases on a Current Owner's Property

AMRI-Rensselaer contends that the use of "is" in § 107(a)(1) reveals Congressional intent to hold current property owners liable only for ongoing releases of hazardous waste. See AMRI & AMRI-Rensselaer Mot. for Recons. at 3, 5–6. Section 107(a)(1) states that liability may be imposed upon a current "owner and operator of a vessel or a *facility* . . . from which there *is* a release . . . ." § 107(a)(1) (emphasis added). Yet, as AMRI-Rensselaer acknowledges, "'[s]tatutes must be read as a whole . . . ' with consideration of the statutory structure, similarities and differences in language, and relationships between provisions." Another section of CERCLA defines "facility," in part, as "any site or area where a hazardous substance *has been* deposited, stored, disposed of, or placed, or otherwise come to be located." § 101(9) (emphasis added)). AMRI-Rensselaer Mot. for Recons. at 5 (quoting Atl. Research, 551 U.S. at 135). Consequently, when read as one, CERCLA imposes liability upon current owners for hazardous waste that "has been [] release[d]." See Feb. 2020 Mem.-Decision and Order at 23 (quoting Murtaugh v. New York, 810 F. Supp. 2d 446, 478 (N.D.N.Y. 2011)); see also AMRI-Rensselaer Mot. for Recons. at 6 ("Courts have construed 'facility' broadly to mean 'any property at which hazardous

substances *have* come to be located.'" (emphasis added) (quoting State of N.Y. v. Shore Realty Corp., 759 F.2d 1032, 1043 n.15 (2d Cir. 1985)).[25]

Accepting AMRI-Rensselaer's argument that current owners are only liable for ongoing releases "would open a huge loophole in CERCLA's coverage." See Shore, 759 F.2d at 1045. As the Shore court explained: "It is quite clear that if the current owner of a site could avoid liability merely by having purchased the site after chemical dumping had ceased, waste sites certainly would be sold, following the cessation of dumping, to new owners who could avoid the liability otherwise required by CERCLA. Congress had well in mind that persons who dump or store hazardous waste sometimes cannot be located or may be deceased or judgment-proof." Id. (citation omitted). Thus, rather than accord with Congressional intent, AMRI-Rensselaer's interpretation of CERCLA would "frustrate[] the statute's goals." See id.

Even so, AMRI-Rensselaer asserts that Murtaugh, which the Court relied upon in the February 2020 Memorandum-Decision and Order to hold that AMRI-Rensselaer may be directly liable to Plaintiff for the response costs associated with remediating OU–2, itself states that a current owner of property is only liable for hazardous materials released on that property. AMRI-Rensselaer Mot. for Recons. at 4. Because, as AMRI-Rensselaer contends, it does not own OU–2, then it cannot be responsible for the contamination of OU–2. See id. at 5–7. Admittedly, Murtaugh does state that "an owner who did not contribute to the contamination of his property may nonetheless be liable for the release of hazardous substances." Murtaugh, 810 F. Supp. 2d at 478. But the case does not state that a current owner of some property cannot also be responsible

---

[25]   Admittedly, the use of "is" in § 107(a)(1) is imprecise given the abovementioned definition of facility. "CERCLA," however, "is not a model of legislative draftsmanship." Guam, 950 F.3d at 112 (quoting Exxon Corp. v. Hunt, 475 U.S. 355, 363 (1986)).

for contamination of someone else's property if the pollution originated on the owner's land.

Indeed, as indicated by the facts of Murtaugh, a current owner of property may be liable for

hazardous waste that has migrated from its property to sites that the owner does not also own. In

that case, the Court found the plaintiffs had plausibly alleged that a county could be liable under

§ 107(a)(1) for "the release of hazardous substances from [a] [c]ity [d]ump onto the[] [plaintiffs']

properties." Id. at 478.

AMRI-Rensselaer relies on two additional cases that purportedly suggest that a current

owner of property is only liable for hazardous substances released on that property: Town of New

Windsor v. Tesa Tuck, Inc., 935 F. Supp. 305 (S.D.N.Y. 1996) and United States v. Ne. Pharm.

& Chem. Co., 810 F.2d 726 (8th Cir. 1986) ("NEPACCO II").[26] AMRI-Rensselaer Mot. for

Recons. at 7–8. Neither case is controlling on this issue. See Langsam v. Vallarta Gardens, No.

08-CV-2222, 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009) ("Controlling decisions include

decisions from the United States Court of Appeals for the Second Circuit; they do not include

decisions from other circuits or district courts . . . ."). Therefore, AMRI-Rensselaer's citations to

Tesa Tuck and NEPACCO II in support of its argument, even if persuasive, do not justify

reconsideration of the Court's finding that Plaintiff has adequately pled that AMRI-Rensselaer is

directly liable as the current owner of the Sterling Site.[27]

---

[26]   The Court also cites below to the lower court opinion, United States v. Ne. Pharm. & Chem. Co., 579 F. Supp. 823 (W.D. Mo. 1984) ("NEPACCO I").

[27]   Moreover, the Court previously found Tesa Tuck inapplicable to resolving the question of whether AMRI-Rensselaer is directly liable to Plaintiff. See Feb. 2020 Mem.-Decision and Order at 23. Thus, to the extent AMRI-Rensselaer argues the Court must reconsider the applicability of Tesa Tuck to Plaintiff's § 113(f)(3)(B) claims, the Court rejects that argument because, just as with the applicability of NYSEG to this case, motions for reconsideration are not meant to provide "a second bite of the apple [to] reargu[e] an issue that this Court has already

31

And this Court does not find those cases all that persuasive. In <u>Tesa Tuck</u>, third-party plaintiffs responsible for cleaning up a contaminated landfill sought to recover associated response costs from the New York State Thruway Authority ("Authority"). 935 F. Supp. at 307. As the Court previously observed, "<u>Tesa Tuck</u> is a case in which discovery was conducted, and no evidence of a release on the defendant's property was found." Feb. 2020 Mem.-Decision and Order at 23 (citation and internal quotation marks omitted). The Court distinguished <u>Tesa Tuck</u> on the ground that, "[u]nlike <u>Tesa Tuck</u>, no discovery has taken place in this case to suggest hazardous substances were never actually placed into [t]he joint sewer line at the Sterling Site and carried to [OU–2] resulting in currently-existing contamination that BASF is being required to remediate." <u>Id.</u> (citation and internal quotation marks omitted). AMRI-Rensselaer contends that <u>Tesa Tuck</u> "does not turn on the availability of pre-trial discovery because . . . the plaintiff [was not] seeking response costs to investigate and remediate [the] defendant's site," but was rather seeking cost recovery for investigating and remediating contamination of the landfill. <u>See</u> AMRI-Rensselaer Mot. for Recons. at 8. It adds, "Likewise, discovery need not be conducted in the instant case to determine whether hazardous substances were ever placed in the joint sewer line at the Sterling Site, because Plaintiff is not seeking costs of response related to any investigation or cleanup of the Sterling Site." <u>Id.</u>

AMRI-Rensselaer misreads <u>Tesa Tuck</u>. The court did not conclude, as AMRI-Rensselaer suggests, that the Authority could never be liable for the contamination of property it did not currently own, i.e., the landfill. Rather, the Court concluded the Authority was not liable under § 107(a)(1) since "there [was] no evidence that hazardous substances were disposed of on the

---

resolved." <u>See</u> <u>Fitzgerald</u>, 2013 WL 5442274, at *6.

Authority's property," which could have migrated to the site of the landfill. See id. at 308–09. Since no discovery has taken place here as to whether hazardous materials were pumped from the Sterling Site into OU–2, Tesa Tuck remains inapposite.

NEPACCO II, upon which AMRI-Rensselaer additionally relies, also does not compel a different result. In NEPACCO II, two employees of a chemical company, NEPACCO, arranged for a NEPACCO plant's hazardous waste to be dumped at a site known as the "Denney farm." 810 F.2d at 730. The lower court found NEPACCO and the two officers liable under § 107(a)(1) as current owners and operators of a facility from which there has been a release of hazardous substances. NEPACCO I, 579 F. Supp. at 847–49.[28] On appeal, NEPACCO and the officers argued that "they cannot be held liable as 'owners or operators' of a 'facility' because 'facility' refers to the place where hazardous substances are located and they did not own or operate the Denney farm site." NEPACCO II, 810 F.2d at 742. The Eighth Circuit agreed with NEPACCO and its officers, finding that "the place where the hazardous substances were disposed of and where the government has concentrated its cleanup efforts is the Denney farm site, not the NEPACCO plant. The Denney farm site is the 'facility.' Because NEPACCO [and its officers] did not own or operate the Denney farm site, they cannot be held liable as the 'owners or operators' of a 'facility' where hazardous substances are located under CERCLA § 107(a)(1) []." Id. at 743. Applying NEPACCO II to this case, AMRI-Rensselaer would have the Court conclude that, since AMRI-Rensselaer does not own nor operate OU–2, it cannot be directly liable to Plaintiff as a matter of law. See AMRI-Rensselaer Mot. for Recons. at 7–8.

---

[28]  AMRI-Rensselaer conveniently overlooks the fact that the plaintiff in that case sought recovery under CERCLA against current owners and operators of property from which there was a past, not an ongoing, release of hazardous materials. Id. at 730.

NEPACCO II, however, is readily distinguishable from the facts of this case. As the lower court found, one of NEPACCO's employees had contracted with the owner of the Denney farm to permit dumping of "hazardous waste [there] at a specific price." NEPACCO I, 579 F. Supp. at 847. Here, there was no owner of OU–2 that agreed to allow dumping of hazardous substances into the Hudson River. Hence, unlike in NEPACCO II, there was no transfer of responsibility for the hazardous materials from one owner to another. To hold that AMRI-Rensselaer's liability as an owner of the Sterling Site cannot extend to the contamination of OU–2, would, as Plaintiff observes, "be illogical as it would eliminate liability for any contaminants that migrated off the site at which they were originally disposed." Resp. to AMRI & AMRI-Rensselaer at 9; see also New York v. Solvent Chem. Co., 685 F. Supp. 2d 357, 430 (W.D.N.Y. 2010) ("The definition of 'facility' . . . is broad enough to include both the initial site where a hazardous substance is disposed of and additional sites to which the substances have migrated following their initial disposal." (quoting City of Tulsa v. Tyson Foods, Inc., 258 F. Supp. 2d 1263, 1279 (N.D.Okla. 2003)), aff'd in relevant part, 453 F. App'x 42, 46 (2d Cir. 2011).[29]

The Court must find that AMRI-Rensselaer may be directly liable to Plaintiff for the response costs associated with remediating OU–2 not only as a matter of logic, but also as a matter of precedent. In State of N.Y. v. Lashins Arcade Co., the Second Circuit held that the defendant could be liable under § 107(a)(1) for remediating the contamination of a site that it did

---

[29] Such a holding would also lead to the unjustifiable conclusion that Plaintiff itself is not liable under CERCLA for financing the remediation OU–2 since, like AMRI-Rensselaer, Plaintiff does not own OU–2. Yet Plaintiff has brought this very lawsuit because it believes the Defendants are also liable. Compl.

not own when the hazardous waste deposited on its property had migrated to that other site. 91 F.3d 353, 359 (2d Cir. 1996). The court rendered this holding even though the defendant purchased the property *after* the previous owner had deposited the hazardous substances in question upon it. See id. Applying Lashins to this case, AMRI-Rensselaer may be liable as the current owner of the Sterling Site for remediating the contamination of OU–2 even though it does not also own OU–2 and did not own the Sterling Site at the time hazardous waste was pumped from there into the Hudson River. See Feb. 2020 Mem.-Decision and Order at 3–4 (discussing Plaintiff's allegations that, in 1976, the Sterling Site and General Aniline Site "ceased utilizing the sewer line to discharge wastewater into the Hudson River" and that AMRI-Rensselaer did not own the Sterling Site until, at the earliest, 1999 when AMRI purchased the site).

### 2. Section 107(b)(3) Defense

The Lashins court also observed that the defendant would be liable under § 107(a)(1) "unless it can satisfy one of CERCLA's affirmative defenses." 91 F.3d at 359. AMRI-Rensselaer asserts that it has an affirmative defense under § 107(b)(3) that eliminates any potential liability it has under § 107(a)(1). AMRI-Rensselaer Mot. for Recons. at 9–11. It argues that the Court "erred" in failing to consider its § 107(b)(3) defense before concluding that Plaintiff had sufficiently averred AMRI-Rensselaer is liable as the current owner of the Sterling Site. Id. at 3, 9–11.

Preliminarily, the Court observes that it did not necessarily err in failing to consider whether AMRI-Rensselaer has a valid § 107(b)(3) defense against Plaintiff's § 113(f)(3)(B) claim. While the Second Circuit has not yet ruled on whether a party can assert a defense under

35

§ 107(b)(3) against a § 113(f)(3)(B) claim,[30] at least one other appeals court has stated that a "§ 107 action has at least . . . one disadvantage compared to a § 113(f)(3)(B) action: . . . it comes with limited defenses [under § 107(b)(1)–(3)]—e.g., acts of God, acts of war, and third-party omissions." Asarco LLC v. Atl. Richfield Co., 866 F.3d 1108, 1126 (9th Cir. 2017). And, even if the Court did err in not considering the defense, AMRI-Rensselaer has not provided any support for the proposition that such a mistake amounts to a "clear conviction of error" warranting reconsideration. In re C-TC 9th Ave. P'ship, 182 B.R. 1, 3 (N.D.N.Y. 1995) (quoting Fogel v. Chestnutt, 668 F.2d 100 (2d Cir. 1981)).

Considering whether AMRI-Rensselaer has a valid defense under § 107(b)(3) in any event, the Court does not find at this time that AMRI-Rensselaer has one. For, Plaintiff has adequately averred that "[AMRI-Rensselaer] has contractual indemnity obligations pertaining to environmental liabilities at, released and discharged from the Sterling Site . . . ." Resp. to AMRI & AMRI-Rensselaer at 10.

Section 107(b)(3) provides in pertinent part:

> (b) **Defenses** There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> ***

---

[30] Nor does AMRI-Rensselaer cite to a case noting that a defendant may assert such a defense against a § 113(f)(3)(B) claim. One case AMRI-Rensselaer cites in support of its purported affirmative defense—Lashins—is an action solely for cost recovery under § 107(a). AMRI-Rensselaer Mot. for Recons. at 10–11 (citing 91 F.3d at 355). The other case that AMRI-Rensselaer cites—Pani v. Empire Blue Cross Blue Shield—does not even involve a CERCLA action. Id. at 10 (citing 152 F.3d 67 (2d Cir. 1998)).

> (3) an act or omission of a third party other than an employee or agent of the defendant, *or than one whose act or omission occurs in connection with a contractual relationship*, existing directly or indirectly, with the defendant . . ., if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions . . . .

§ 107(b)(3) (emphasis added). "In order for the landowner to be barred from raising the third-party defense under such circumstances, the contract between the landowner and the third party must either relate to the hazardous substances or allow the landowner to exert some element of control over the third party's activities." Westwood Pharm., Inc. v. Nat'l Fuel Gas Distribution Corp., 964 F.2d 85, 91–92 (2d Cir. 1992).

In the February 2020 Memorandum-Decision and Order, the Court held that Plaintiff had plausibly pled that, "[p]ursuant to [contractual indemnity] obligations [to a previous owner of the Sterling Site], . . . AMRI-Rensselaer . . . [is] liable for the costs of response resulting from the release of hazardous substances from the Sterling Site, including the costs of removing and/or capping hazardous substances it disposed of that have contaminated and continued to contaminate OU[–]2." Feb. 2020 Mem.-Decision and Order at 20 (quoting Compl. ¶ 79). Given this holding, the Court finds that a contract involving AMRI-Rensselaer and a previous owner of the Sterling Site may exist that relates to hazardous waste pumped from the Sterling Site into OU–2. Therefore, the Court concludes that AMRI-Rensselaer cannot assert a defense under § 107(b)(3) at this stage of the proceeding.

37

*     *     *

The Court still finds that Plaintiff plausibly alleged that AMRI-Rensselaer may be directly liable to Plaintiff under § 107(a)(1) as the current owner of the Sterling Site.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Motions for Reconsideration[31] are **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      June 17, 2020
            Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[31]  Dkt. Nos. 69–71.