UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BASF CORP.,

                Plaintiff,

  -against-                                          1:19-CV-0134 (LEK/DJS)

ALBANY MOLECULAR RESEARCH,
INC., *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff BASF Corporation filed an action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq*. ("CERCLA"), seeking contribution and declaratory relief for costs and damages associated with discovering and treating contaminated Hudson River sediments located near Rensselaer, New York.[1] Dkt. No. 1 ("Complaint"). Plaintiff sued several companies, including Albany Molecular Research, Inc. and AMRI-Rensselaer, Inc. (collectively, "AMRI"), that currently own or formerly owned real property that included a sewer line that contributed to the contamination at issue. Plaintiff seeks (1) contribution pursuant to § 113(f)(3)(B) and (2) declaratory relief pursuant to § 113(g)(2).[2]

---

[1] The specific sites being remediated are the "General Aniline Site" (alternatively called the "BASF Site") and the "Sterling Site." "General Aniline Site" refers to the Hudson River sediments adjacent to a former BASF manufacturing facility in Rensselaer, New York. "Sterling Site" refers to a neighboring manufacturing site to the north of the General Aniline Site. Both locations used a common sewer line to discharge process waste into the Hudson River, which caused the sediment contamination BASF is remediating (the "OU-2" remediation).

[2] Sections 107(a), 113(f), and 113(g) of CERCLA are "codified together at 42 U.S.C. §§ 9601–9675." See Agere Sys., Inc. v. Advanced Env't Tech. Corp., 602 F.3d 204, 210 (3d Cir. 2010). For simplicity, the Court refers sections of CERCLA itself, not the United States Code.

Presently before the Court is Plaintiff's motion to dismiss AMRI's (1) counterclaim for contribution under § 113(f)(1) and request for declaratory judgment regarding future costs, and (2) counterclaim seeking a declaration that Plaintiff is liable for the actions of the predecessor owners and operators of the General Aniline Site dating back to 1924. Dkt. Nos. 85 ("Motion to Dismiss"); 85-1 ("Plaintiff's Memorandum of Law"); 94 ("Opposition"); 95 ("Reply"). For the reasons that follow, Plaintiff's Motion to Dismiss is granted in part and denied in part.

## II.   BACKGROUND

The Court draws all facts, which are assumed to be true, from the Complaint. Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). Plaintiff's factual allegations are detailed in the February 12, 2020 Memorandum-Decision and Order, familiarity with which is assumed. See Dkt. No. 66 ("February 2020 Memorandum-Decision and Order") at 2–7.

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550

2

U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV. DISCUSSION

At the outset, "[t]he Court recognizes full-well wading through CERCLA's morass of statutory provisions can often seem as daunting as cleaning up one of the sites the statute is designed to cover." Cadlerock Properties Joint Venture, L.P. v. Schilberg, No. 01-CV-896, 2005 WL1683494, at *5 (D. Conn. July 19, 2005).

As noted by another court in this Circuit:

> CERCLA is a remedial statute "designed to encourage prompt and effective cleanup of hazardous waste sites" by "assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010). Under CERCLA, states and the federal government may "initiate comprehensive cleanups and seek recovery of expenses associated with those cleanups" from "property owners [who] are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." Id. To relieve the burden on property owners, CERCLA permits them to "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters–the so-called potentially responsible parties ('PRPs')." Id. (citing 42 U.S.C. § [107(a)]).
>
> CERCLA provides two mechanisms through which PRPs may recover costs they expended to decontaminate a polluted site: Section 107(a) for cost recovery claims and Section l 13(f) for contribution claims.

101 Frost St. Assocs., L.P. v. United States Dep't of Energy, No. 17-CV-03585, 2019 WL 4415387, at *4 (E.D.N.Y. Sept. 16, 2019).

3

"Section 113(f)(3)(B) . . . 'provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement.' . . . [Section] 113(f)(1) provides a right of contribution to PRPs that have been sued under [CERCLA] §§ 106 or 107." Cooper Crouse-Hinds, LLC v. City of Syracuse, New York, No. 16-CV-1201, 2018 WL 840056, at *5 (N.D.N.Y. Feb. 12, 2018) (internal citations omitted).

### A. AMRI's § 113(f)(1) Counterclaim and Request for Declaratory Judgment

Plaintiff's Motion to Dismiss AMRI's counterclaim for contribution under § 113(f)(1) is granted. As discussed above, a § 106 or 107 joint and several liability claim is a prerequisite to a § 113(f)(1) contribution claim. See Cooper Crouse-Hinds, LLC, 2018 WL 840056, at *5; see also Chitayat v. Vanderbilt Associates, 702 F. Supp. 2d 69, 76 n.11 (E.D.N.Y. 2010) ("a prior § 106 or 107 action is a prerequisite to a § 113(f)(1) action") (citing Cooper Industries, Inc. v. Availl Services, Inc., 543 U.S. 157, 159 (2004)). Alternatively, a § 113 contribution claim may be brought if a PRP has settled its CERCLA liability of a remediation site with a state or the federal government. Niagara Mohawk, 596 F.3d at 121 (Section 113 "also provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement.").

Here, AMRI is not being sued under § 106 or 107 by Plaintiff and has not settled its CERCLA liability with a state or the federal government. Furthermore, AMRI is subject to a § 113(f)(3)(B) equitable contribution claim by Plaintiff that calls for contribution from Defendants to the OU-2 remediation costs. As Plaintiff points out, AMRI's § 113(f)(1) counterclaim calling for identical relief is superfluous. Pl.'s Memorandum of Law at 4. AMRI argues that, although the claim is "somewhat superfluous," it protects AMRI's contingent interests. Opp'n at 6 (citing

Hobart Corp. v. Dayton Power & Light Co., No. 13-CV-115, 2016 WL 5390346, at *2 (S.D. Ohio Sept. 26, 2016) ("[T]o the extent that a cross-claimant may ultimately disagree with the Court's allocation of response costs, a contingent crossclaim asserted under § 113(f) protects the parties' right to seek contribution from others."); but see id. ("[T]he equitable allocation scheme of § 113 largely eliminates the need for counterclaims and crossclaims."). While Hobart Corp. ultimately allowed a similar claim, its holding runs counter to law within this Circuit. See Robert H. Law, Inc. v. Woodbine Bus. Park Inc., No. 13-CV-1393, 2019 WL 1130121, at *27 (N.D.N.Y. Mar. 12, 2019) (Under § 113(f)(1), "a private party [can] seek contribution from other liable parties only after having been sued under [CERCLA § 106 or 107(a)].) (internal quotation marks omitted) (quoting United States v. Atlantic Research Corp., 551 U.S. 128, 133 (2007) (citing Niagara Mohawk, 596 F.3d at 121–22)); see also Chitayat, 702 F. Supp. 2d at 76 n.11 ("a prior § 106 or 107 action is a prerequisite to a § 113(f)(1) action") (citing Cooper Industries, Inc., 543 U.S. at 159). For these reasons, AMRI's § 113(f)(1) counterclaim is dismissed without prejudice.

Since AMRI's § 113(f)(1) counterclaim is dismissed, its request for declaratory judgment based on its § 113(f)(1) counterclaim is also dismissed.

### B. AMRI's Counterclaim Seeking a Declaratory Judgment that Plaintiff is Liable for the Actions of Predecessor Owners and Operators of the General Aniline Site

Plaintiff's Motion to Dismiss AMRI's counterclaim seeking a declaratory judgment holding Plaintiff liable for the actions of the predecessor owners and operators of the General Aniline Site is denied. Under the Declaratory Judgment Act ("DJA"), a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201(a). "This text has long been understood to confer on federal courts unique and substantial discretion is deciding whether to declare the rights of litigants." MedImmune, Inc. v. Genentech, Inc., 549 U.S 118, 136 (2007). To decide whether to entertain a declaratory judgment action, courts should consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

AMRI argues that its counterclaim is necessary to ensure that it "does not pay more than its fair share for [Plaintiff]'s predecessors' liability." Opp'n at 8. Specifically, AMRI expresses concern that prior owners and operators of the General Aniline Site that polluted the area may be deemed "orphans," and that their shares will be distributed among all the defendants in a manner that would dilute Plaintiff's share. Id. at 7 (citing Town of New Windsor v. Tesa Truck, Inc., 919 F. Supp. 662, 681 (S.D.N.Y. 1996) (holding that "courts can use the powers provided by § 113(f)(1) to allocate any 'orphan shares' among viable PRPs, with the result that each viable PRP's allocable share may include a portion of whatever 'orphan shares' there are.")). Plaintiff counters that the appropriate avenue for AMRI to plead its theory of no liability from pollution caused by Plaintiff's predecessors is in its answer and affirmative defenses to Plaintiff's Complaint and by presenting evidence for this Court to consider before allocating § 113 liability among the parties. Reply at 7–8.

Although AMRI may have pled its theory for no liability in its answer and affirmative defenses, it is not barred from bringing this claim for declaratory judgment. See Solvent Chemical Co. ICC Industries, Inc. v. E.I. Dupont De Nemours & Co., 242 F. Supp. 2d 196, 215–16 (W.D.N.Y. 2002) (finding that DuPont could bring a declaratory judgment counterclaim

despite similar arguments being stated in its answer and affirmative defenses). AMRI states sufficient factual matter about prior ownership of the General Aniline Site, Dkt. No. 78 at 23, to bring a declaratory judgment claim attempting to clarify liability for past actions at the General Aniline Site. This is a proper claim under the DJA and withstands Plaintiff's Motion to Dismiss.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Dismiss (Dkt. No. 85) is **GRANTED in part and DENIED in part**. AMRI's § 113(f)(1) counterclaim and request for declaratory judgment for future costs are **DISMISSED without prejudice**, and AMRI's counterclaim seeking a declaratory judgment holding Plaintiff liable for the actions of the predecessor owners and operators of the General Aniline Site may proceed; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 25, 2021
         Albany, NY

Lawrence E. Kahn
Senior U.S. District Judge