UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BASF CORPORATION,

                              Plaintiff,

        -against-                                    1:19-CV-00134 (LEK/DJS)

CURIA GLOBAL, INC. *et al.*,

                              Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff BASF Corporation commenced this action pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, *et seq*.

("CERCLA"), seeking contribution and declaratory relief for costs and damages associated with

discovering and treating contaminated Hudson River sediments located near Rensselaer, New

York. Dkt. No. 1 ("Complaint"). Now before the Court is a motion to approve a consent

judgment between Plaintiff and Defendant United States of America ("United States"), filed by

Plaintiff. Dkt. No. 126-3 ("Motion"). For the reasons that follow, the Court grants Plaintiff's

Motion.

## II.    BACKGROUND

The facts and allegations in this case were detailed in the February 2020 Memorandum-

Decision and Order, Dkt. No. 66 at 2–7, familiarity with which is assumed. The Court briefly

summarizes the relevant facts and allegations as follows.

Plaintiff's claims arise from its ownership of certain real property located in Rensselaer,

New York, along the Hudson River (the "General Aniline Site"). Compl. ¶ 15. Adjacent to the

General Aniline Site lies another parcel of real property that Plaintiff does not own (the "Sterling Site"). Id. ¶ 17.

The contamination at issue stems from discharge via a joint sewer pipe that carried wastewater from the General Aniline Site to the Sterling Site from approximately 1908 to 1976. Mot. at 4. Plaintiff alleges that in 1942, the United States Department of Treasury seized General Aniline and Film Corporation, including the operations on the General Aniline Site, pursuant to the Trading with the Enemy Act, 50 U.S.C. App. §§ 1–44. Compl. ¶ 51. Later in 1942, ownership of General Aniline and Film Corporation was transferred to the Office of the Alien Property Custodian. Id. In 1965, the United States sold General Aniline and Film Corporation in a public offering for a sale price of $315,649,519, of which $208,281,419 was retained by the United States. Id. ¶ 52. General Aniline and Film Corporation was renamed GAF Corporation ("GAF") in 1968. Id. ¶ 53.

Consequently, Plaintiff alleges that the United States owned the majority of GAF's stock from 1942 to 1965 and is therefore liable for the discharge from the General Aniline Site during that time period. Mot. at 4. The United States disputes that it is liable under CERCLA, primarily because it contends (1) that it was an owner of stock only; and (2) that it did not own real property or equipment or exercise control over the operations at the General Aniline Site that would give rise to CERCLA liability. Id. (citing Def.'s Answer at 3). Plaintiff states that it has incurred approximately $35,000,000 in response costs to date with respect to the sediment remediation and related natural resource damages projects, and expects to incur approximately $3,500,000 in future costs. Mot. at 4. Despite these disagreements, the parties have agreed to settle the dispute. Dkt. No. 126-2. The proposed settlement between the parties in the amount of

$3,975,000 represents a fair compromise of the United States' alleged liability, according to Plaintiff. Mot. at 4.

### III.   LEGAL STANDARD

CERCLA provides in relevant part: "Whenever practicable and in the public interest, as determined by the President, the President shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation." 42 U.S.C.A. § 9622(a).

"A district court reviewing CERCLA is required to rule on the fairness of any proposed settlement." In re Cuyahoga Equip. Corp., 980 F.2d 110, 118 (2d Cir. 1992). In addition to fairness, the district court must determine if the settlement is "'. . . reasonable, and faithful to the objectives of' CERCLA." United States v. Gen. Elec. Co., 460 F. Supp. 2d 395, 401 (N.D.N.Y. 2006) (quoting United States v. Cannons Eng'g Corp., 899 F.2d 79, 84 (1st Cir. 1990)), aff'd sub nom. Town of Ft. Edward v. United States, No. 06-5535, 2008 WL 45416, at *1 (2d Cir. 2008).

"The fairness inquiry has two facets, procedural and substantive fairness." Gen. Elec. Co., 460 F. Supp. 2d at 401 (quoting Cannons Eng'g Corp., 899 F.2d at 86). With respect to procedural fairness, courts should "ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance. [F]actors to consider include: whether negotiation was adversarial and conducted at arms-length; whether the counsel was skilled; [and] whether extensive formal discovery or other information-sharing procedures provided the parties with adequate information." 55 Motor Ave. Co. v. Liberty Indus. Finishing Corp., 332 F. Supp. 2d 525, 530 (E.D.N.Y. 2004) (internal quotation and citations omitted). "Substantive fairness deals with corrective justice and accountability; a party should bear the cost of the harm for which it is legally responsible." Gen. Elec. Co., 460 F. Supp. 2d at 401 (quoting Cannons Eng'g

Corp., 899 F.2d at 86). "The terms of a consent decree are substantively fair if they are based on comparative fault and if liability is apportioned in relation to rational estimates of the harm each party has caused." New York v. Next Millennium Realty, LLC, No. 06-CV-1133, 2016 WL 11189177 (E.D.N.Y. June 1, 2016) (quoting State of New York v. Air-Flo Mfg. Co., Inc., No. 02-CV-762S, 2004 WL 1563081, at *2 (W.D.N.Y. June 3, 2004)).

Regarding the reasonableness of a proposed CERCLA consent judgment, courts consider "the decree's likely efficaciousness as a vehicle for cleansing the environment; whether the public will be compensated for the actual and anticipated costs of the remedial measures; and the relative strength of the parties' litigating positions." 55 Motor Ave. Co, 332 F. Supp. 2d at 531–32 (quoting Cannons, 899 F.2d at 89–90).

Finally, the consent judgment must further the objectives underlying CERCLA. By enacting CERCLA, "Congress sought . . . to encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties" and "aimed to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." In re Cuyahoga Equip. Corp., 980 F.2d at 120. Indeed, the Second Circuit has observed that "[c]ourts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context." B.F. Goodrich v. Betkoski, 99 F.3d 505, 527 (2d Cir. 1996), decision clarified on denial of reh'g, 112 F.3d 88 (2d Cir. 1997).

## IV.   DISCUSSION

### A.  Procedural Fairness of the Consent Judgment

When evaluating the procedural fairness of a proposed consent judgment, the Court considers several factors including "whether negotiation was adversarial and conducted at arm's length; whether the counsel was skilled; and whether extensive formal discovery or other

information-sharing procedures provided the parties with adequate information." <u>55 Motor Ave.</u> <u>Co.</u>, 332 F. Supp. 2d at 530.

Here, the Court agrees with Plaintiff that the Consent Judgment is procedurally fair. Indeed, "[t]here are no indications here of anything less than a fair bargaining process." <u>United</u> <u>States v. IMC E. Corp.</u>, No. 18-CV-3818, 2022 WL 4134321, at *4 (E.D.N.Y. Sept. 12, 2022). The parties participated in a mediation session, and the mediator expended 42 hours of work seeking to reach a settlement between the parties. Dkt. No. 120. Additionally, the parties entered into this proposed Consent Judgment voluntarily, and the Consent Judgment "was the result of a mutual desire [by] BASF and the United States to determine if they could agree on an acceptable resolution of BASF's claims against the United States." Mot. at 3. Moreover, both parties have been represented by sophisticated counsel during the entirety of the negotiations. Finally, the parties have engaged in comprehensive written and document discovery, such that the parties have adequate information with respect to one another's positions on the dispute. <u>See, e.g.</u>, Dkt. Nos. 136, 146. Thus, the Consent Judgment is procedurally fair.

### B.   Substantive Fairness of the Consent Judgment

"A settlement is substantively fair when it effectively achieves corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." <u>55</u> <u>Motor Ave. Co.</u>, 332 F. Supp. 2d at 530–31 (internal quotations omitted). The harm in question concerns the response costs that BASF has incurred and will incur in the future, with respect to the remediation of contaminated sediments in the Hudson River. Mot. at 4. As discussed above, BASF alleges that because the United States was the owner of the majority of GAF's stock from 1942 to 1965, it is liable for the discharge from the General Aniline Site during that time period. <u>Id.</u>  BASF has thus far incurred approximately $35,000,000 in response costs with respect to the

sediment remediation and related natural resource damages projects; it expects to incur approximately $3,500,000 in future costs. Mot. at 4. The United States, nevertheless, contends that its ownership in the GAF site does not give rise to liability within the meaning of CERCLA. Dkt. No. 72 ("United States Answer") at 12. Despite these disagreements, the parties have agreed that the proposed settlement in the amount of $3,975,000 represents a fair compromise of the United States' alleged liability given the duration of its ownership. Mot. at 4.

The Court agrees. Although the proposed settlement figure of $3,975,000 does not precisely correspond to the United States' alleged monetary liability with respect to its years of ownership vis a vis Plaintiff's cleanup costs, "[t]hat the figures are not mathematically precise should not be used to hinder the entry of the settlement . . . ." IMC Eastern Corp., No. 18-CV-3818, 2022 WL 4134321, at *4. Indeed, "[w]here, as here, sophisticated actors know how to protect their own interest, [and] they are well equipped to evaluate risks and rewards, the court has little need . . . to police the substantive fairness of a settlement as among settling parties." 55 Motor Ave. Co., 332 F. Supp. 2d at 531. Accordingly, the Court agrees that the United States properly "bear[s] the cost of harm for which it is legally responsible," and that the Consent Judgment is substantively fair. Gen. Elec. Co., 460 F. Supp. 2d at 401.

### C.  Reasonableness of the Consent Judgment

Courts consider several factors when determining whether a consent judgment is reasonable including "the decree's likely efficaciousness as a vehicle for cleansing the environment; whether the public will be compensated for the actual and anticipated costs of the remedial measures; and the relative strength of the parties' litigating positions." 55 Motor Ave. Co., 332 F. Supp. 2d at 531–32. However, as Plaintiff correctly notes, ensuring that the public is compensated and determining whether the Consent Judgment will remediate environmental harm

are inapplicable here. Mot. at 7. These factors are inapplicable because (1) BASF has implemented and will continue to implement the remediation; (2) the government entity in this case is a defendant, rather than a plaintiff; and (3) the remediation has been substantially completed with more than 90 percent of the anticipated costs having been incurred, and the remediation includes projects that will compensate the State in its capacity as trustee under CERCLA. Id. Therefore, the duty to remediate the environmental harm has mostly been completed already, and the public will continually be compensated via the projects associated with compensating the State. Id.

Thus, the major factor at issue is the relative strength of the parties' bargaining positions. Here, given the "inherent risk and uncertainty for both parties in litigating the case to judgment," the Court finds that neither part is in an asymmetrically favorable bargaining position. Mot. at 7. Indeed, each party is represented by sophisticated counsel and is fully informed of one another's claims and defenses. Id. at 3. Consequently, the Court concludes that neither party has an unfair bargaining position. Accordingly, the Consent Judgment is reasonable.

### D.  Consent Judgment's Consistency with the Goals of CERCLA

When Congress enacted CERCLA, it sought to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties" and "aimed to encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." In re Cuyahoga Equip. Corp., 980 F.2d at 120. Here, the Consent Judgment satisfies these goals. The Consent Judgment requires the United States to pay 10.3% of Plaintiff's response costs in exchange for its dismissal from this action. Mot. at 8. As a result, this dismissal will narrow the issues before the Court and significantly reduce the litigation involved here. Moreover, the Consent Judgment would further the "overarching public policy in favor of

settlements." See United States v. Hooker Chem. & Plastics Corp., 776 F.2d 410, 411 (2d Cir.

1985). Indeed, "the usual federal policy favoring settlements is even stronger in the CERCLA

context." IMC Eastern Corp., No. 18-CV-3818, 2022 WL 4134321, at *4 (quoting Air-Flo Mfg.

Co., 2004 WL 1563081, at *1). Accordingly, the Consent Judgment is consistent with

CERCLA's goals.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion to Approve Consent Judgment (Dkt. No. 126) be

**GRANTED**; and it is further

**ORDERED**, that the Clerk shall **TERMINATE** the United States as a party to this

proceeding; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        October 13, 2022
              Albany, New York

LAWRENCE E. KAHN
United States District Judge